**IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

GALE NELSON WALKER — Plaintiff

vs — Civil Action No.: 1:15CV-00364-TTG

ROBERT SHULER SMITH, individually and in
His Official Capacity as District Attorney of Hinds County, Mississippi;
Hinds County, Mississippi; and
John or Jane Does 1-10 — Defendants

## SUMMONS

THE STATE OF MISSISSIPPI

TO: District Attorney Robert Shuler Smith
Hinds County Courthouse
407 East Pascagoula Street
5th Floor
Jackson, MS 39205

## NOTICE TO DEFENDANT(S)

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand deliver a copy of a written response to the Complaint to **Gale N. Walker**, the attorney for the Plaintiff, whose street address is 152 Windy Hill Cove, Raymond, Mississippi. Your response must be mailed or delivered within (30) days from the date of delivery of this summons and complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint.

You must also file the original of your response with the Clerk of this court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this 10 day of Nov., 2015.

B. Dunn
Clerk of Hinds County, Mississippi

(Seal) CIRCUIT COURT HINDS COUNTY, MISS.

ATTEST A TRUE COPY
NOV 10 2015
BARBARA DUNN, CIRCUIT CLERK
BY ______ D.C.



**IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISIPPI**
**FIRST JUDICIAL DISTRICT**

GALE NELSON WALKER — Plaintiff

VS. — CIVIL ACTION NO.: 1:15CV-00364-TTG

ROBERT SHULER SMITH, Individually and in
His Official Capacity as District Attorney of Hinds County, Mississippi;
HINDS COUNTY, MISSISSIPPI; and
JOHN or JANE DOES 1-10 — Defendants

JURY TRIAL DEMANDED

## AMENDED COMPLAINT

NOW COMES Plaintiff, GALE NELSON WALKER, proceeding pro se, and brings this Amended Complaint against the Defendants. Plaintiff brings this action to recover actual and punitive damages for violations of her First and Fourteenth Amendment rights and for state law claims of civil conspiracy, violation of the computer fraud and abuse act (CFAA), discharge in violation of public policy, invasion of privacy, and intentional infliction of emotional distress. The actions of defendants described herein constitute violations of Title VII of the Civil Rights Act of 1964, as amended. Plaintiff's claims are authorized by 42 U.S.C. § 1983. Plaintiff would show that the following facts support this action:

## I. PARTIES

1. Plaintiff, GALE NELSON WALKER, is an African American, female resident citizen of Hinds County, Mississippi and resides at 152 Windy Hill Cove, Raymond, Mississippi, 39154.

2. At all times relevant hereto, the Plaintiff was employed by the Hinds County District Attorney's Office where Defendant, ROBERT SHULER SMITH, was her supervisor, the final policymaker for the Hinds County District Attorney's Office, and was

in charge of supervision, training, and management over all employees in the District Attorney's Office.

3. Defendant, ROBERT SHULER SMITH, is the District Attorney of Hinds County, Mississippi. Smith is sued in his official and individual capacities. He may be served with process at his place of employment at the Hinds County Courthouse, 407 East Pascagoula Street, Jackson, Mississippi, 39205.

4. Defendant, HINDS COUNTY, MISSISSIPPI, is a political subdivision within the State of Mississippi, with the ability to sue and be sued, and which at all times relevant hereto employed Plaintiff, Gale Nelson Walker, and Defendants, Robert Shuler Smith, and some or all of the as yet unidentified John or Jane Does 1-10.

5. At all times relevant, the Defendant, Hinds County, Mississippi, was an employer as defined by § 701(b) of Title VII as amended by the 1991 Civil Rights Act and the 1964 Civil Rights Act, 42 U.S.C. 2000e, et seq.

6. Defendant, HINDS COUNTY, MISSISSIPPI, may be served with service of process through service upon Eddie Jean Carr, in her official capacity as Chancery Clerk of Hinds County, Mississippi, at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Mississippi, 39201. Service may also be made upon Peggy Hobson Calhoun, in her official capacity as President of the Board of Supervisors of Hinds County, Mississippi, at her office at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Mississippi, 39201.

7. Defendant, ROBERT SHULER SMITH, is a citizen of and resides in Hinds County, Mississippi. At all relevant times, Smith was employed as the District Attorney of Hinds County, Mississippi, and was granted and possessed the powers of

supervision, training, and management over all employees of the Hinds County District Attorney's Office. Smith was, and is, the final policymaker of the Hinds County District Attorney's Office. At all relevant times, Smith was acting and/or neglected to act in the course and scope of his employment and position as the District Attorney of Hinds County, Mississippi.

8. Based upon information and belief, Smith was involved in conspiratorial conduct with another and/or other Defendants to violate the Plaintiff's constitutional and statutory rights.

9. Plaintiff is unaware and/or unsure of the actual names and capacities of Defendants John or Jane Does 1-10. Plaintiff will amend this complaint to allege their true names and capacities when able. Plaintiff is informed and believes, and on that basis, alleges that each fictitiously-named Defendant is responsible in some manner for the occurrences alleged in this Complaint. Plaintiff's injuries were proximately caused by the conspiratorial conduct of each such Defendant.

## II. JURISDICTION AND VENUE

10. This cause of action is filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, pursuant to 42 U.S.C. § 2000e et. seq., to redress the injuries sustained by the Plaintiff as a result of the unlawful discrimination and retaliation by the Defendants.

11. This Court has jurisdiction over the parties and the subject matter of this cause of action with regard to Plaintiff's claims of discrimination and constitutional equal protection rights. This Court has jurisdiction over the Plaintiff's state law claims of civil

conspiracy, violation of the computer fraud and abuse act (CFAA), discharge in violation of public policy, invasion of privacy, and intentional infliction of emotional distress.

12. The causes of action alleged herein arose from the Defendants' acts and omissions in Hinds County, Mississippi.

13. Defendant Hinds County, Mississippi, is a political subdivision of the State of Mississippi.

14. Venue over Plaintiff's claims under Title VII is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b).

15. This Court also has jurisdiction over a claim for injunctive and declaratory relief against Defendant Smith, as authorized by 42 U.S.C. § 1983, to redress a claim for violation of the First and Fourteenth Amendments.

## III. PROCEDURAL PREREQUISITES

16. Plaintiff would show that she has exhausted her administrative remedies as required by 42 U.S.C. §2000e, et seq., in that she made a timely filing of her charges of discrimination with the Equal Employment Opportunity Commission.

17. Plaintiff received a Notice of Right to Sue from the United States Department of Justice, Civil Rights Division dated August 24, 2015, a true and accurate copy of which is attached hereto as "Exhibit A." Fewer than ninety days have passed since Plaintiff received the notice. This complaint is therefore timely filed with this Court.

18. Plaintiff timely provided her written Notice of Claim to Defendants, Robert Shuler Smith and Hinds County, Mississippi, pursuant to the provisions of the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-1, et seq.

## IV. STATEMENT OF FACTS RELEVANT TO ALL CLAIMS

19. In January, 2011, Plaintiff, Gale Nelson Walker began her employment as Assistant District Attorney in Holmes, Humphreys, and Yazoo counties (Twenty-first Judicial District).

20. Due to Plaintiff's effectiveness and competence as an Assistant District Attorney, in July, 2012, Defendant Robert Shuler Smith (hereinafter Defendant Smith) actively started recruiting Plaintiff to work as an Assistant District Attorney in Hinds County, Mississippi (Seventh Judicial District).

21. In August, 2012, Defendant Smith successfully encouraged Plaintiff to resign from her position in the Twenty-First Judicial District and begin employment as an Assistant District Attorney in Hinds County, Mississippi (Seventh Judicial District).

22. Plaintiff began her employment as an Assistant District Attorney in Hinds County, Mississippi on August 27, 2012.

23. Plaintiff was assigned a caseload of more than 75 cases in a courtroom which adhered to a demanding, rigorous trial schedule. In reference to Plaintiff's effectiveness and competence as an Assistant District Attorney in Hinds County, she never lost a case.

24. Even in the face of trying several "cold cases" with only circumstantial evidence, Plaintiff and her trial partner effectively and competently prosecuted cases and consistently received guilty verdicts.

25. Plaintiff was often commended by Defendant Smith and was told that she had tried more cases within the year that she had been employed than most other

Assistant District Attorneys who had been employed several years. Plaintiff consistently received commendation from Defendant Smith, Judges, co-workers, crime victims and/or their family members, defense attorneys, and others.

26. Plaintiff never received a formal written or verbal performance evaluation; however, Defendant Smith often expressed verbal satisfaction and approval for the job that Plaintiff was doing.

27. In September, 2013, Walker requested a meeting with Smith and self-disclosed that she had written a personal letter on District Attorney office letterhead. Plaintiff disclosed that she had written a letter to a self-storage facility regarding delinquent storage rental fees.

28. Plaintiff admitted to Defendant Smith that she had composed the letter in desperation and took responsibility for misrepresenting to the facility that she was waiting for approval from the State of Mississippi to pay the storage fees. Plaintiff asked Defendant Smith for forgiveness and inquired about what he was going to do about the letterhead use.

29. Defendant Smith verbalized his understanding of the act of desperation and affirmed that he forgave Plaintiff and assured her that she did not need to worry about losing her job over the letterhead issue. Defendant Smith told Plaintiff to "stop tripping" about writing the letter.

30. Defendant Smith verbally assured Plaintiff that she would have a job as long as she wanted to work in his office because of the "good work" that she was doing and the positive difference that she made as an employee in the Hinds County District Attorney's office.

31. After the self-disclosure to Defendant Smith, no further discussion between Plaintiff and Defendant Smith took place regarding the letter and the use of the office letterhead. Plaintiff did not again use the office letterhead for a personal reason.

32. Plaintiff continued to work effectively by prosecuting the cases that were assigned to her.

33. Defendant Smith and several employees constantly violated the no-smoking ordinance by smoking in the Hinds County Courthouse. They regularly smoked in the alcove leading to the stairwell, on the stairwell of the main office area, and on the roof of the Hinds County Courthouse building. The back draft of the airflow allowed the smoke to spread into the commons area, the lobby, the work area, and office areas.

34. Plaintiff often complained about the second-hand smoke from the time she started working in the Hinds County DA's Office until the day she was fired. Plaintiff complained about the smoke to the District Attorney and co-workers.

35. As a result of Plaintiff's complaints, the "smokers" erected a shower curtain in the alcove area to prevent the backflow of smoke and installed a portable air filter; however, this did not prevent the smoke from accumulating in the commons area and office areas. The accumulation of, and exposure to, the second-hand smoke was a hazard to the public. In addition, smoking was prohibited in the Courthouse by the State Fire Marshall and ordinances.

36. The staff of the District Attorney's Office regularly met with victims and/or their family members, witnesses, police officers, investigators, expert witnesses, and others regarding case investigation and trial preparation in the offices. During hearings

and trials, victims and/or their family members including children, would pass the time in the office.

37. These citizen visitors often complained about the smoke in the office areas. In addition, a co-worker often left work after becoming ill due to the overwhelming presence of second-hand smoke.

38. On June 5, 2013, a crime victim/family member was in the lobby with her children to meet with a co-worker. The smoke had become so thick in the commons area/lobby that the children were coughing due to the heavy smoke. In addition, one of the receptionists who sat in the commons area/lobby was pregnant.

39. On June 5, 2013, Plaintiff confronted several co-workers who were violating the law/ordinance by smoking in the courthouse building. The group was smoking on the stairwell of the main office area. After Plaintiff confronted the group and asked them to stop smoking because of the visitors, the mother of the children thanked Plaintiff and verbalized her own dissatisfaction with the situation.

40. During the same encounter, Plaintiff went to the Office Manager and asked her to intervene. The Office Manager spoke to the smokers as well.

41. That same day, Plaintiff reported the events, as a citizen, to the District Attorney in writing. At some point that same day or the next day, the smoking was reported to the State Fire Marshal's office.

42. A State Fire Marshal Investigator visited the DA's Office in response to the reported complaint and met with Defendant Smith. Based upon information and belief, the investigator issued a warning regarding the smoking, the curtain, and the ash tray that was in the stairwell.

43. After the Fire Marshal's visit, Plaintiff was blamed for reporting the smoking issue to the State Fire Marshal's Office. A co-worker voiced her displeasure with Plaintiff and issued a threat in the presence of other employees by stating that no one would "get away with" reporting the District Attorney.

44. Based upon information and belief, this is when two or more Defendants conspired and developed a plan to harass, intimidate, threaten and retaliate against Plaintiff for exercising her First Amendment right to free speech when reporting the illegal smoking in the office.

45. On August 9, 2013, Plaintiff notified Defendant Smith and his Administrative Assistant, in an email message, that someone had vandalized her name tag at her designated parking space in the Hinds County employee parking lot. Plaintiff informed them that she was afraid for her safety and requested an inquiry as to whether or not there was video surveillance film of the parking lot.

46. Defendant Smith never acknowledged Plaintiff's email. Several weeks pass and Plaintiff inquired again. Defendant Smith's Administrative Assistant responded that she would "check into it" by communicating with the County Administrator. Plaintiff never heard anything else from anyone about her request for possible review of video surveillance film of the parking lot.

47. On October 13, 2013, Plaintiff received an intimidating, harassing telephone call on her personal cell phone from a male called who asked, "Do you know Jesus?" twice before she hung up the telephone.

48. On October 15, 2013, one of the Hinds County Public Defenders delivered an "anonymous letter" to Plaintiff in open court during docket call, a true and accurate copy

of which is attached hereto as "Exhibit B." The external envelope was from the Public Defender's Office. The words "Personal and Confidential" had been handwritten on the outside of the envelope by the Public Defender.

49. Inside the envelope was a second envelope, which had been sent by United States Mail, with a postmark date of July 19, 2013 and was specifically addressed to the Public Defender who delivered the letter to Plaintiff. The Public Defender had attached a sticky note which stated: "I got this in July & stuck it in the drawer & forgot about it. Today, I was looking for a stamp and found it."

50. Inside the second envelope was a typed letter with no date. The letter was purportedly written by a person facing felony charges and the possibility of going to jail for the charges. The writer claimed to have knowledge of bad checks that Plaintiff had written in the past. The writer requested the Public Defender's assistance to "seek justice for me and everybody else who has charges before this woman try and throw people away."

51. Plaintiff immediately went to the Bad Check Unit in the District Attorney's office area and showed the letter to the employee who worked alone in the Bad Check Unit. Plaintiff inquired if the employee knew anything at all about the anonymous letter. The employee stated that she did not have knowledge of any of this.

52. Next, Plaintiff made an inquiry as to who had access to the Bad Check Unit computer information. The employee stated that aside from her, District Attorney Smith and perhaps one other employee could access the confidential check unit information in the computer system by using their passwords/pass codes.

53. The check unit employee affirmed that the information in the check system computer database was not public information and could not be accessed by the public. At that time, Plaintiff requested that the employee retrieve Plaintiff's check history in the check unit computer.

54. The check unit employee retrieved the information and gave all available printouts regarding Plaintiff's checks to Plaintiff. The documents indicated that the checks had been written many years ago (10-18 years) and that restitution had been paid many years ago for the checks.

55. Next, Plaintiff called Defendant Smith and asked him to come to the office for a meeting. When Defendant Smith arrived in the office, Plaintiff gave him the anonymous letter and the printouts that she had requested and received from the check unit employee.

56. Plaintiff and Defendant Smith discussed the information. During their discussion, Plaintiff raised concerns, as a citizen, that the security had been breached in the computer system for the check unit. As a citizen, Plaintiff was concerned that if a person facing felony criminal charges could access her information then someone could access and use information from the system against any other citizen of Hinds County who may have information in the system.

57. Plaintiff reasoned with Defendant Smith that this information could potentially be utilized to intimidate victims, witnesses, other assistant district attorneys, judges, attorneys, and/or anyone else in the public who may have a history in the check unit.

58. Plaintiff explained that this breach was a serious matter of public concern. Defendant Smith agreed. They discussed the fact that this was a clear violation of privacy and confidential district attorney office information.

59. Further, someone had breached the security of the data in the system to actively, purposely, and with malicious intent seek information to use to threaten, coerce, harass, and intimidate a citizen of Hinds County, Mississippi and an officer of the court.

60. Plaintiff apologized to Defendant Smith for her check writing history. He told Plaintiff not to worry about it. Defendant Smith affirmed that this would not affect Plaintiff's job. He noted that the checks had been written more than 10 years ago and that restitution had been paid in full.

61. Defendant Smith verbalized that he understood that everyone has problems at one time or another. He affirmed that Plaintiff was doing a great job as an Assistant District Attorney and that she should not worry about this issue.

62. Plaintiff inquired of Defendant Smith what he was going to do to find out how the check system security was breached. Defendant Smith stated that he wanted to think about it. Later that evening, Plaintiff attempted unsuccessfully to reach Defendant Smith to discuss the issue. She did not receive a response to her phone call or text message to him.

63. The next morning, on October 16, 2013, Plaintiff notified Defendant Smith that since she had not heard from him that she would contact the FBI (Federal Bureau of Investigations). Defendant Smith finally answered Plaintiff and stated that this was not a federal issue and that the two of them should meet and talk about the issue.

Plaintiff agreed. Plaintiff and Defendant Smith met in Smith's office. Defendant Smith could not offer any solution for the multiple issues that had occurred regarding Plaintiff's safety and the issues that she raised as a citizen of Hinds County, Mississippi.

64. After Defendant Smith realized that Plaintiff was adamant in requesting an investigation into the security breach of the check system by a person facing felony charges, Defendant Smith requested that Plaintiff not contact the FBI. Instead, he gave his permission for Plaintiff to contact the MBI (Mississippi Bureau of Investigations). Defendant Smith told Plaintiff that he would attend the meeting as well. Defendant Smith requested that Plaintiff invite the MBI to come to the Hinds County District Attorney's office for the meeting.

65. On the morning of October 17, 2013, the MBI agents responded to Plaintiff's request and came to the District Attorney's office to meet with Plaintiff and Defendant Smith to discuss the issues.

66. Defendant Smith was present in the office; however, he did not attend the meeting in the conference room with Plaintiff and the MBI agents. Plaintiff went to Smith's office several times to let him know that the agents were present and waiting for him before starting the meeting.

67. Defendant Smith stated that he had some other issues to deal with and instructed Plaintiff to proceed with the meeting. He assured Plaintiff that he would join the meeting as soon as he could; however, Smith did not attend the meeting.

68. Plaintiff discussed with the MBI investigators all of the pertinent details of the issues, including: the parking space name tag, the anonymous phone call, the anonymous letter, and the breach of security of the check system computer data. After

the meeting ended, Plaintiff went to Smith's office to inform him of the discussion and MBI's plan. Defendant Smith was nowhere to be found. He had left the building.

69. Subsequently, the MBI team started an investigation with Defendant Smith's prior, full approval. During the investigation, Plaintiff advised Defendant Smith of everything that the MBI team was doing and their plans. Plaintiff informed him that the MBI team may be able to gather data from the check system computer which may indicate the date, time, and access code which was used to access Plaintiff's check system documents.

70. Inexplicably, the MBI investigation was suddenly called off by someone without any notification to Plaintiff. Plaintiff noticed that the MBI agents were no longer accessible to her through any type of communication.

71. Plaintiff asked Defendant Smith about the cessation of the investigation; however, Smith stated that he did not know anything about it. Defendant Smith advised Plaintiff to call the MBI agents and ask them. Plaintiff attempted unsuccessfully to contact the MBI agents. The MBI agents did not return Plaintiff's phone calls.

72. Plaintiff continued to work effectively by prosecuting the cases that were assigned to her.

73. On the evening of January 9, 2014, Plaintiff and most of the employees of the Hinds County District Attorney's office attended a surprise baby shower for one of the Assistant District Attorneys. Defendant Smith and a few other employees did not attend the shower.

74. After the baby shower was over, as Plaintiff was leaving the restaurant, she was fired on the front porch of the restaurant by one of the Hinds County District Attorney Investigators who had attended the shower.

75. The termination notice was handed to Plaintiff by the investigator who then informed Plaintiff that she was fired and informed her that when she left work at 5:00 p.m. that day, several people had packed up her belongings that were in her office at the Hinds County courthouse. The investigator then informed Plaintiff that her belongings were in his car, for delivery to her. No additional information was given to Plaintiff.

76. Plaintiff was totally shocked and devastated as her abrupt termination was completely unexpected and without warning. Plaintiff had not received any reprimands, negative performance ratings, corrective instructions, or any prior notice of a possible termination.

77. The termination notice that Plaintiff received consisted of two (2) sentences and did not include a reason or explanation for the termination. Plaintiff attempted to contact Defendant Smith to inquire of the reason. Plaintiff did not receive any response from Defendant Smith.

78. Plaintiff received information, from third party sources, that on January 10, 2014, which was the day after she was fired, Defendant Smith met with several of her former co-workers and Judges and told them that he terminated her because of the bad checks that she had written in the past and because she had misused the District Attorney office letterhead. Defendant Smith showed the check unit documents and storage unit letter to Plaintiff's former co-workers and superiors.

79. On Monday, January 13, 2014, Defendant Smith sent check unit documents and the letter that Plaintiff had written to the storage company to the Mississippi Bar Association. Subsequently, as a result of Defendant Smith's submission, a bar complaint was filed against Plaintiff.

80. Plaintiff had previously enjoyed close associations with several of her co-workers; however, after she was fired the relationships ended as the co-workers would no longer communicate with Walker.

81. In reference to the use of the District Attorney office letterhead, a similarly situated white female employee at the District Attorney's office had previously used the office letterhead for personal reasons to communicate her personal opinion to the Mississippi Supreme Court. The matter in which she expressed her opinion was a major issue in the determination of criminal case assignment in the Hinds County Circuit Court System. When Defendant Smith found out about the letter he responded to the Mississippi Supreme Court by stating: "That letter was written on my letterhead and submitted as an exhibit; however it was done so without my authorization or knowledge." A true and correct copy of the letter is attached as Exhibit "C."

82. The previously mentioned similarly situated, white female, was not fired and continued to work as a staff member in the Hinds County District Attorney's Office until well after Plaintiff Walker was fired. Thus, Plaintiff Walker was discriminated against and treated differently than her co-worker.

83. In further reference to conduct by similarly situated co-workers, Defendant Smith had previously confided in Plaintiff that he needed to deal with a white male Assistant District Attorney for personal conduct that was damaging to the District

Attorney's office. Defendant Smith explained to Plaintiff that this male employee was intoxicated one evening and used his Assistant District Attorney's badge to exert influence and make a scene in a public bar. After leaving the bar intoxicated and being stopped by an officer, the male employee again used his badge to exert influence as an Assistant District Attorney. Defendant Smith confided that he received a telephone call from the officer and got out of his bed and went to the traffic stop location to take the intoxicated male employee home.

84. On another occasion, the same similarly situated white male employee mentioned above posted information about an upcoming capital murder case on his Facebook page. During a hearing for change of venue, the criminal defense attorney used the Assistant District Attorney's Facebook post as a factor for the Judge to consider in granting the request for a change in venue. The change in venue was granted. This change in venue cost the taxpayers of Hinds County a tremendous amount of money. Yet, this similarly situated white male employee was not terminated. He continued to work as an Assistant District Attorney well after Plaintiff was fired. This is clear evidence of race and sex discrimination. Thus, Plaintiff was discriminated against and treated differently than her co-worker.

85. Another situation that magnifies the discriminatory treatment of Plaintiff involves the firing of two non-African American male assistant district attorneys. These two similarly situated male employees were terminated by Defendant Smith. After their termination, they were permitted to continue to freely come and go in the office. Smith allowed them to remain on payroll for weeks. They were also allowed to pack their own offices and leave when they were ready to leave. This is in contrast to the way

Defendant Smith treated Plaintiff in that he had a team of people pack most of her belongings and deliver them to her at the restaurant where she was fired. This is clear evidence of race and sex discrimination.

86. Plaintiff filed for unemployment compensation. Defendant Smith protested that Plaintiff qualified for benefits and sent check unit documents and the letter that Plaintiff had written to the storage company to the Mississippi Department of Employment Security.

87. On February 10, 2014, Plaintiff timely filed a Charge of Discrimination alleging discrimination based on sex and race and retaliation charges with the Equal Employment Opportunity Commission ("EEOC"). Defendant Smith responded by sending check unit documents and the letter that Walker had written to the storage company to the EEOC.

88. Plaintiff received a Notice of Right to Sue from the United States Department of Justice, Civil Rights Division dated August 24, 2015.

89. On January 8, 2015, Plaintiff submitted a formal written Notice of Claim, pursuant to the Mississippi Tort Claims Act (Miss. Code Ann § 11-46-11, as amended), which provided notice of her claims for injuries, damages, and losses which were proximately caused by the actions of Smith (individually and in his official capacity as Hinds County, Mississippi District Attorney). Smith was served with the notice on the same day.

90. Further, on January 8, 2015, the notice was also served upon others including Eddie Jean Carr (Hinds County Chancery Clerk); Peggy Hobson-Calhoun (President of Hinds County Board of Supervisors); Carmen Davis (County Administrator

for Hinds County Board of Supervisors); Lee Ann McElroy (Administrator of the Mississippi Tort Claims Board); and Robert Shuler Smith (Hinds County District Attorney).

91. Plaintiff filed this action against Defendants because she was subjected to disparate treatment as compared to similarly situated employees and employees who had not engaged in protected activity. Defendant Smith wrongfully and illegally terminated Plaintiff's employment in retaliation for her complaining about Defendant Smith's and other employees unlawful smoking in the Hinds County Courthouse and in retaliation for her reporting the breach in the security of the District Attorney's office check unit computer system and for cooperating with MBI to investigate the breach.

92. Defendant's discrimination and retaliation against Plaintiff violated the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and is actionable pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended, as well as 42 U.S.C. § 2000e, et seq.

93. As a proximate cause of Defendants wrongful acts, Walker has suffered injuries and damages.

94. Due to, and as a result of the wrongful acts of Defendants, Walker has suffered embarrassment; fear; stress; anxiety; pain and suffering; mental anguish and emotional distress; humiliation; damage to her professional reputation; loss of professional status; lost earnings; lost earning potential; other financial injuries; loss of career opportunities; loss of zeal to be a public servant; and loss of enjoyment of life.

## V. CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF TITLE VII (Racial Discrimination)

95. The foregoing paragraphs, 1-94, are realleged and incorporated by reference herein.

96. During her employment with Defendant Hinds County, Mississippi, Plaintiff was a member of a class protected under Title VII against racial discrimination by her employer. The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII.

### COUNT II - VIOLATION OF TITLE VII (Gender Discrimination)

97. The foregoing paragraphs, 1-96, are realleged and incorporated by reference herein.

98. During her employment with Defendant Hinds County, Mississippi, Plaintiff was a member of a class protected under Title VII against gender discrimination by her employer. The Defendant's conduct as alleged at length herein constitutes discrimination based on gender in violation of Title VII.

### COUNT III - DISCHARGE IN VIOLATION OF PUBLIC POLICY

99. The foregoing paragraphs, 1-98, are realleged and incorporated by reference herein.

100. Plaintiff exercised her First Amendment right to free speech when complaining, as a citizen, about the breach of the security of the check unit computer system.

101. Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964 by participating in the investigation by MBI regarding the breach of the security of the check unit computer system.

102. By Defendant Smith's actions, it shows a direct and causal connection between the Plaintiff invoking her constitutional rights and the resulting termination by Defendant Smith. Such unlawful employment practices violate 42 U.S.C. § 2000 e-5(b).

103. Defendants are liable to Plaintiff for violation of the First Amendment because they caused Plaintiffs' termination in retaliation for properly exercising her free speech right by truthfully reporting a breach of the security of the check unit computer system.

**COUNT IV – VIOLATION OF COMPUTER FRAUD AND ABUSE ACT (CFAA)**

104. The foregoing paragraphs, 1-103, are realleged and incorporated by reference herein.

105. By either directing the actions of his subordinates, being grossly negligent in controlling his subordinates, or turning a blind eye to the fact that non-employees could access the confidential documents and computer databases in the District Attorney's office, Defendant Smith, individually and in his official capacity, allowed the retrieval and misappropriation of Plaintiff's personal confidential data. Defendants' actions indicate intentional unauthorized access to a protected government computer with specific intent to access documents without authorization.

106. Defendants are responsible for intentional, unauthorized access and use of confidential, non-public information stored in the District Attorney's computer databases.

107. The retrieval and release of this information by an "anonymous" person is in clear violation of the Computer Fraud and Abuse Act and caused harm to Plaintiff.

**COUNT V - CIVIL CONSPIRACY**

108. The foregoing paragraphs, 1-107, are realleged and incorporated by reference herein.

109. By either directing the actions of his subordinates, being grossly negligent in controlling his subordinates, or turning a blind eye to the fact that non-employees could access the confidential documents and computer databases in the District Attorney's office, Defendant Smith, individually and in his official capacity, either participated in and allowed the conspiracy to take place regarding actions against the Plaintiff.

110. The defendants acted in concert and engaged in a conspiracy designed to harass, threaten, and intimidate, the Plaintiff. The defendants utilized the United States Mail to further their conspiracy. The Defendants caused harm to Plaintiff.

**COUNT VI – DISCHARGE IN VIOLATION OF PUBLIC POLICY**

111. The foregoing paragraphs, 1-110, are realleged and incorporated by reference herein.

112. Plaintiff had exercised her constitutional right and privilege when she reported activities which violated the laws of the State of Mississippi and the United States of America. Defendant Smith wrongfully and illegally terminated Plaintiff's employment in retaliation for complaining about the smoking and the breach in the security of the check unit computer system maintained and utilized by the District Attorney's office and cooperating with MBI to investigate the breach.

113. Defendant Smith wrongfully and illegally terminated Plaintiff's employment in violation of public policy of the State of Mississippi.

114. Plaintiff has thus been denied equal protection of the laws in violation of the Fourteenth Amendment.

**COUNT VII – CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983**

115. The foregoing paragraphs, 1-114, are realleged and incorporated by reference herein.

116. Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

117. At all times relevant to this Complaint, Defendants and their agents were acting under color of the laws, customs, and usages of Hinds County, Mississippi, and the Hinds County District Attorney's office within the meaning of 42 U.S.C. § 1983.

118. At all times relevant to this Complaint, Plaintiff Gale Nelson Walker, was an African American female employee of the Hinds County District Attorney's office.

119. Defendant, Hinds County, Mississippi, knew or should have known of the unlawful conduct, negligence, and events which occurred in violation of the laws of the United States and the State of Mississippi in the District Attorney's Office. Similar events had been reported to Hinds County prior to Plaintiff's Notice of Right to Sue.

120. It is clear that Defendant Smith arbitrarily and unreasonably terminated Plaintiff from her position for unlawful reasons and motivation. The actions of Defendant Smith violate 42 U.S.C. § 1983 in violation of Plaintiff 's rights – substantive and procedural – secured and guaranteed to her by the First and Fourteenth Amendments of the United States Constitution. Because of this violation, Plaintiff has been deprived of federal rights under the color of state law.

121. By Defendants' actions, it shows a direct and causal connection between the Plaintiff invoking her constitutional rights and the resulting termination by Defendant. Such unlawful employment practices violate 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended, as well as 42 U.S.C. § 2000e, et seq.

**COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

122. The foregoing paragraphs, 1-121, are realleged and incorporated by reference herein.

123. Defendant's conduct as described above was extreme and outrageous and was carried out with the intent of causing Plaintiff to suffer emotional distress.

124. By the aforesaid acts and omissions of Defendants, Plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety.

125. Defendants' actions have been such to evoke outrage and revulsion. Defendants' behavior has been malicious, willful, wanton, grossly careless, indifferent, and/or reckless. Because of this egregious conduct, Plaintiff has and will continue to suffer severe injuries. The injuries to Plaintiff were reasonable foreseeable. As a direct and proximate result of Defendants' extreme and atrocious conduct toward Plaintiff, Plaintiff has suffered lost wages and benefits, suffered extreme emotional distress, and has sustained other pecuniary loss. The unlawful actions of Defendants' were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

**COUNT IX – INVASION OF PRIVACY**

126. The foregoing paragraphs, 1-125, are realleged and incorporated by reference herein.

127. As set forth herein, Defendants, and each of them, intruded into Plaintiff's seclusion or personal life by searching for and retrieving check unit documents in the confidential check unit database.

128. At no time did Plaintiff consent to such intrusion. Plaintiff had a reasonable expectation in privacy regarding these documents. Such intrusion was highly offensive to Plaintiff and would also be highly offensive to a reasonable person.

129. Plaintiff alleges that the Defendants, and each of them, by engaging in the aforementioned acts and/or authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive, and despicable conduct, and acted with willful and conscious disregard of the rights, welfare and safety of Plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

**COUNT X - DAMAGES AND REMEDIES**

130. The foregoing paragraphs, 1-129, are realleged and incorporated by reference herein.

131. The actions of the Defendants, and each of them, were intentional, malicious, unlawful, and/or so grossly negligent as to make these Defendants liable to the Plaintiff for punitive damages. Likewise the deliberate indifference of Hinds County, Mississippi rises to a level of gross negligence and should subject it to punitive damages.

132. As a direct and proximate result of Defendants' actions described hereinabove, the Plaintiff was caused to suffer the following injuries and damages:

A. Past, present and future embarrassment; fear; stress; anxiety; pain and suffering; mental anguish and emotional distress; humiliation;

damage to her professional reputation; loss of professional status; lost earning potential; other financial injuries; loss of career opportunities; loss of zeal to be a public servant; and loss of enjoyment of life.

B. Past, present and future lost wages and loss of wage earning capacity.

C. Attorney fees and costs pursuant to 42 U.S.C. § 2000e et seq., as amended by the 1991 Civil Rights Act and 42 U.S.C. § 1988, plus pre-judgment and post-judgment interest; and

D. All other damages available under federal and state law, including punitive and/or exemplary.

133. On information and belief, Plaintiff alleges that her injuries will be permanent and that they have had significant consequences on her life.

134. That the aforesaid damages to the Plaintiff having been proximately caused by the negligence, gross negligence, wanton indifference, reckless disregard and/or malicious or intentional acts of the Defendants, the Plaintiff is entitled to sue and recover damages proximately resulting therefrom, including compensatory damages, punitive damages, attorney's fees, pre-judgment and post-judgment interest, and such other relief as Plaintiff may be entitled to under the laws of Mississippi and the United States of America.

WHEREFORE PREMISES CONSIDERED, Plaintiff demands judgment of and from the Defendants in an amount that will reasonably compensate Plaintiff for her

injuries and/or damages and to punish Defendants in order to deter future wrongful conduct, including but not limited to the following:

A. Compensatory and/or punitive damages directed against the Defendants, jointly and severally, inclusive of all costs and interest, as provided under the 1991 Civil Rights Act, for the fear; stress; anxiety; pain and suffering; mental anguish and emotional distress; humiliation; damage to her professional reputation; loss of professional status; lost earning potential; other financial injuries; loss of career opportunities; loss of zeal to be a public servant; and loss of enjoyment of life sustained by the Plaintiff as a result of the actions, practices, and omissions of the Defendants in their treatment of the Plaintiff.

B. Additional compensatory damages directed against the Defendants, jointly and severally, inclusive of all costs and interest, as provided under the 1991 Civil Rights Act, for the fear; stress; anxiety; pain and suffering; mental anguish and emotional distress; humiliation; damage to her professional reputation; loss of professional status; lost earning potential; other financial injuries; loss of career opportunities; loss of zeal to be a public servant; and loss of enjoyment of life sustained by the Plaintiff as a result of the actions, practices, and omissions of the Defendants, jointly and severally, as provided under Federal and Mississippi law.

C. Additional punitive damages directed against the Defendants, jointly and severally, exclusive of costs and interest, for the willful and wanton actions, practices and omissions on the part of the Defendants jointly and severally, as described hereinabove, as provided under Mississippi law.

D. Reasonable attorney fees pursuant to 42 U.S.C. § 2000e et seq., as amended by the 1991 Civil Rights Act and 42 U.S.C. § 1988; and

E. All costs of court incurred herein, as well as all pre-judgment and post-judgment interest as may be allowed by law.

Respectfully submitted,
**GALE NELSON WALKER**

By: [signature]
GALE NELSON WALKER (MSB #101109)
Pro Se

GALE N. WALKER (MSB #101109)
**GALE WALKER LAW OFFICE, PLLC**
152 Windy Hill Cove
Raymond, Mississippi 39154
(601) 606-3296 Telephone
attorneygalewalker@gmail.com

Plaintiff proceeding pro se

**CERTIFICATE OF SERVICE**

I, Gale N. Walker, do hereby certify that I have this day delivered a true and correct copy of the above, foregoing NOTICE OF SERVICE in manner prescribed by law to:

District Attorney Robert Shuler Smith
Hinds County Courthouse
407 East Pascagoula Street
5th Floor
Jackson, MS 39205

Ms. Eddie Jean Carr
Hinds County Chancery Clerk
316 South President Street
Jackson, MS 39201

Ms. Peggy Hobson-Calhoun, President
Hinds County Board of Supervisors
316 South President Street
Jackson, MS 39201

Ms. Carmen Davis, County Administrator
Hinds County Board of Supervisors
316 South President Street
Jackson, MS 39201

This the 10th day of November, 2015.

Gale N. Walker

Gale N. Walker, Esquire
Pro Se





U.S. Department of Justice

Civil Rights Division

CERTIFIED MAIL
7014 0510 0000 2148 5101

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

August 24, 2015

Ms. Gale N. Walker
152 Windy Hill Cove
Raymond, MS 39154

Re: EEOC Charge Against Hinds County District Attorney, et al.
No. 423201400657

Dear Ms. Walker:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC Jackson Area Office, Jackson, MS.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Jackson Area Office, EEOC
Hinds County District Attorney, et al.

EXHIBIT "A"

HINDS COUNTY
OFFICE OF THE
PUBLIC DEFENDER
P. O. BOX 23029 • JACKSON, MS 39225

Cale Walker
Personal + Confidential

EXHIBIT "B"

G:
FYI - got this in July + stuck it in the drawer + forgot about it. Today, I was looking for a stamp + found it! AK

JACKSON MS 390
19 JUL 2013 PM 2 L



Hinds County Public Defender
Ms. Alison Kelly
499 S. President street suite 100
Jackson, MS 39201

39201500025

Dear Ms. Kelly:

Since I am facing felony charges and the possibility of going to jail, I have some information that my lawyer should know about the conflict with the prosecutor. How can the Hinds county district attorney office charge me for something and be prosecuted by her initial is G.W. She has written so many bad checks in the past. It is totally unfair for people to be charged and she wrote bad checks to Wal-Mart back in 2003 and 2004.

I cannot reveal my identity because I am not sure who I can trust down there or anywhere. If you are really about justice then you need to check it out because I know it is a fact. Somebody should care enough about justice and really a public defender of the people then make them be fair. If all these checks can go away for her and she can prosecute people, then how can she put somebody in jail for anything. Where are her charges? Can a prosecutor have that on them and still prosecute other people? This is totally outrageous and unfair. Please do your job and seek justice for me and everybody else who has charges before this woman try and throw people away.

Sincerely,

Anonymously seeking justice

Robert Shuler Smith
District Attorney

Hinds County Courthouse
5th Floor



Hinds County Mississippi

Office: (601) 968-6568
Fax: (601) 968-6655
email: rsmith@co.hinds.ms.us

May 22, 2012

Honorable William L. Waller, Jr.
Chief Justice
Mississippi Supreme Court
P.O. Box 117
Jackson, MS 39205

**In Re: Order Establishing Civil and Criminal Divisions in the Hinds County Circuit Court.**

Dear Chief Justice Waller:

I am writing in reference to the above styled matter in which it has come to my attention that an employee of my office has written a letter supporting a particular opinion in the said dispute. That letter was written on my letterhead and submitted as an exhibit, however it was done so without my authorization or knowledge. While I have handled that discrepancy internally, I want to make it clear that the referenced letter does not necessarily reflect my opinion. As the elected District Attorney of Hinds County, I may share the same or a completely different opinion from what appears to be a majority in favor of this "divided docket." The letter was one of several letters from various officials including the former District Attorney. I want to make it clear that not only did I not authorize the subject letter from this office, but also I certainly did not collaborate with the former DA or anyone else for that matter.

My involvement in this matter consisted of one brief meeting, and that was only after the Circuit Court entered its subject order. I am fully capable and willing to offer my opinion if one is solicited. Regardless of this Court's ultimate ruling, I have concerns either way; as with the status quo and with the "divided docket."



EXHIBIT "C"

Thank you for your attention to this matter, and I remain,

Sincerely,

Robert S. Smith
District Attorney

cc: Judge Tommie Green
Judge William Gowan
Judge Winston Kidd
Judge Jeffery Weill

**STATE OF MISSISSIPPI**




**JIM HOOD**
**ATTORNEY GENERAL**

**CIVIL LITIGATION DIVISION**

December 17, 2015

**VIA HAND DELIVERY**
Arthur S. Johnston, III, Clerk
United States District Court
501 E. Court Street
Suite 2.500
Jackson, MS 39201

***Re:*** *Gale Nelson Walker v. Robert Shuler Smith*; In the United States District Court; Southern District of MS; ________________

Dear Mr. Johnston:

Enclosed please find the original and one copy of a *Notice of Removal (with Civil Cover Sheet)* along with our check in the amount of $400.00 for the filing fee regarding same in the above-referenced matter. Please file the original Notice of Removal and return the copy stamped "FILED" to me via our runner.

Thank you for your assistance. Please do not hesitate to contact me if you have any questions or concerns.

Sincerely,

Peter W. Cleveland
SPECIAL ASSISTANT ATTORNEY GENERAL

PWC/bbm
Enclosures
cc: Gale N. Walker, Esq.