**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**GALE NELSON WALKER**                                                            **PLAINTIFF**

**VS.**                                                    **CAUSE NO. 3:15-CV-911-DPJ-FKB**

**ROBERT SHULER SMITH, individually**
**and in his official capacity as District**
**Attorney of Hinds County, Mississippi; and**
**Hinds County, Mississippi; and**
**John or Jane Does 1-10**                                                      **DEFENDANTS**

**PLAINTIFF'S MEMORANDUM OF AUTHORITIES**
**IN RESPONSE TO HINDS COUNTY, MISSISSIPPI'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, by and through counsel, files this Memorandum of Authorities in Response to

Hinds County, Mississippi's Motion to Dismiss Plaintiff's Amended Complaint pursuant to

F.R.C.P. 12(c). In support thereof, Plaintiff respectfully states the following:

**INITIAL STATEMENT**

In her Amended Complaint, Plaintiff raises cognizable legal claims. This cause of action

involves claims against Defendants for violations of the following:

(1) Title VII of the Civil Rights Act of 1964, as amended, to include:

      a.  racial discrimination,

      b.  gender discrimination,

      c.  retaliation,

(2) First and Fourteenth Amendments to the United States Constitution pursuant to 42

    U.S.C. § 1983, and

(3) State law claims, to include:

      a.  discharge in violation of public policy,

b.  civil conspiracy,

c.  intentional infliction of emotional distress,

d.  invasion of privacy; and

e.  violation of the Computer Fraud and Abuse Act

*Am. Compl., CM/ECF Doc. No. 1-1.*

## FACTUAL BACKGROUND

On August 27, 2012 Plaintiff began work as an Assistant District Attorney in Hinds County, Mississippi after being recruited by Defendant Robert Shuler Smith. *Am. Compl., CM/ECF Doc. No. 1-1.* Plaintiff was assigned a caseload of more than 75 cases in a courtroom that adhered to a demanding, rigorous trial schedule. *Id.*, ¶ 23.  In reference to Plaintiff's effectiveness and competence as an Assistant District Attorney in Hinds County, she never lost a case. *Id.* Although Plaintiff never received a formal written or verbal performance evaluation, Defendant Smith often expressed verbal satisfaction and approval for the job that Plaintiff was doing. *Id.* ¶ 25-26.

Plaintiff self-disclosed to Smith that she had written a personal letter on District Attorney Office letterhead to a self-storage facility regarding delinquent storage rental fees. *Id.* ¶ 27. After admitting that she misrepresented that the State would pay the storage fees and inquiring as to how this act would affect her employment, Smith verbalized his understanding and told Plaintiff that her job was not in jeopardy because of this act. *Id.* ¶ 28-29. Additionally, Smith assured Plaintiff that she would have a job as long as she wanted to work in his office because of the "good work" that she was doing and the positive difference that she made as an employee in the Hinds County District Attorney's office. *Id.* ¶ 30.

Smith and other employees in the Hinds County District Attorney's Office regularly smoked in the Hinds County Courthouse. *Id.* ¶ 33. In June 2013, Plaintiff confronted several smokers because visitors with small children were in the office and complained about the smoke. *Id.* ¶ 39. Plaintiff notified the district attorney, Defendant Smith, in writing about the smoking violation. Because of the complaint, the State Fire Marshal Investigator visited the District Attorney's Office and issued a warning about the illegal activity. *Id.* ¶ 41-42. Shortly after the Fire Marshal's visit, Plaintiff was threatened by a co-worker for "reporting" the District Attorney and others regarding the illegal smoking. *Id.* ¶ 43. At this point, a conspiracy was developed and launched against Plaintiff to retaliate against her for exercising her First Amendment right to free speech when reporting the illegal smoking in the office. *Id.* ¶ 44.

As part of the conspiracy, Plaintiff experienced an intimidating series of events which included:

| | |
|---|---|
| August 9, 2013 | Plaintiff's parking space name tag was vandalized. Defendant Smith was notified in writing. |
| August 22, 2013 | Plaintiff was notified by Defendant Smith that someone was talking about her on a call-in talk show program on one of the local radio stations. |
| October 13, 2013 | Plaintiff received a frightening phone call to her cell phone from a male who asked, "Do you know Jesus?" |
| October 15, 2013 | Public defender, Alison Kelly delivered to Plaintiff, in the courtroom during work, an "anonymous" letter about Plaintiff's past check writing history from 10-18 years prior. The letter was written by a person who was facing felony charges and who had gained access to the secured computer system in the Bad Check Unit to retrieve the information. The letter had been mailed to Kelly at the Hinds County Public Defender's Office via U.S. Mail postmarked July 19, 2003. *Id.* ¶¶ 45-50, 54. |

On October 15, 2013, after receiving the anonymous letter, Plaintiff went to the Bad Check Unit and disclosed the letter to the only employee who worked in the unit. The employee

stated that she did not know anything about the letter, that the information stored in the check unit computer system was not public information and that, besides her, only the district attorney and one other employee in the office had password access to the computer system. *Id.* ¶ 51-53.

Next, Plaintiff discussed the issue with Defendant Smith and expressed concern, as a citizen, that a person facing felony criminal charges could gain access and use information from the system against any other citizen of Hinds County who may have information in the bad check system. *Id.* ¶ 55-59. Defendant Smith assured Plaintiff that her past check writing history was not a problem; that the checks had been written more than 10 years prior with full restitution paid; and that her employment would not be affected because of this. *Id.* ¶ 60-61.

Plaintiff requested that Defendant Smith start an investigation about the breach of security for the computer system in the check unit. After Defendant Smith failed to take any action, Plaintiff stated her intention to call the Federal Bureau of Investigation (FBI) to report the breach. Defendant Smith instead gave Plaintiff permission to contact the Mississippi Bureau of Investigation (MBI) and request and investigation of the computer system security breach. *Id.* ¶ 62-64. On October 17, 2013, the MBI agents came to the district attorney's office to meet with Plaintiff and Defendant Smith. Even though Smith was present in the office, he instructed Plaintiff to go forward with the meeting without him because he was dealing with other issues. *Id.* ¶ 65-68.

The MBI team started an investigation with Smith's prior approval. During the investigation, Plaintiff advised Smith of everything that the MBI team was doing, including their actions and plans. At some point during the investigation, Plaintiff informed Smith that the MBI team may be able to gather data from the check system computer to indicate the date, time, and access code that was used to access Plaintiff's check system documents. Shortly thereafter and

inexplicably, the MBI investigation was suddenly called off without any notification to Plaintiff. The MBI agents stopped all communication with Plaintiff at the end of November, 2013. When Plaintiff inquired of Smith as to why the investigation was called off, Smith claimed that he had no knowledge of what happened. *Id.* ¶¶ 69-71.

On the evening of January 9, 2014, Plaintiff and most of the employees of the DA's office attended a baby shower for a co-worker at a local restaurant. Defendant Smith did not attend. When leaving the restaurant after the shower, Plaintiff was fired on the front porch of the restaurant by one of the investigators from the DA's office. The investigator handed Plaintiff a termination notice and informed her that he didn't know why this was happening and that when she left work at 5:00 p.m. several people had packed her belongings from her office, which were now in boxes in his car. *Id.* ¶¶ 73-75. Plaintiff was shocked and devastated as the abrupt termination was completely unexpected and without warning. *Id.* ¶ 76. Plaintiff attempted to contact Defendant Smith to ask for a reason for her termination and did not receive a response. *Id.* ¶ 77.

Plaintiff received information that on January 10, 2014 and afterwards, Defendant Smith revealed to Hinds County Circuit Court Judges and Plaintiff's co-workers that Plaintiff was terminated because of her check writing history and personal use of district attorney office letterhead. In addition, Defendant Smith displayed the documents to different people. *Id.* ¶ 78. On January 13, 2014, Defendant Smith sent correspondence to the Mississippi Bar Association that included copies of the check unit documents and the letter to the storage company. As a result, a bar complaint was filed against Plaintiff. *Id.* ¶ 79.

Plaintiff was treated differently than a similarly situated White female employee who had previously used district attorney office letterhead for personal reasons. In contrast to this

employee, Plaintiff was fired whereas the similarly situated white female employee was not fired. *Id.* ¶¶ 81-82.

In addition, Plaintiff was treated differently than a similarly situated White male employee who was publicly intoxicated and used his assistant district attorney identification to exert influence while making a scene. This same intoxicated employee who drove a car and was stopped by an officer again used his badge to exert influence over the officer who called Defendant Smith to come to the scene to pick up his employee. *Id.* ¶ 83. On another occasion this same employee posted information about a capital murder case on his Facebook page. *Id.* ¶ 84.

Plaintiff was treated differently than two non-African American male assistant district attorneys who were terminated by Defendant Smith. When these two similarly situated employees were terminated, they were permitted to continue to freely come and go at the district attorney's office and remain on payroll. They were allowed to pack their own belongings and leave when they were ready to do so in contrast to Plaintiff whose belongings were delivered in boxes in a restaurant parking lot. *Id.* ¶ 85.

Due to, and as a result of the wrongful acts of Defendants, Plaintiff has suffered embarrassment; fear; stress; anxiety; pain and suffering; mental anguish and emotional distress; humiliation; damage to her professional reputation; loss of professional status; lost earnings; lost earning potential; other financial injuries; loss of career opportunities; loss of zeal to be a public servant; and loss of enjoyment of life. *Id.* ¶¶ 93-94.

## SUMMARY OF THE ARGUMENT

Plaintiff asserts claims for violations of Title VII of the Civil Rights Act of 1964, as amended and the First and Fourteenth Amendments to the United States Constitution pursuant to

42 U.S.C. § 1983. Plaintiff also brings claims for violations of state law. *Am. Compl., Doc. No. 1-1.* Defendant Hinds County, Mississippi has moved for dismissal of Plaintiff's Amended Complaint by filing its motion for judgment on the pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. *Def.'s Mot. Dismiss Pl.'s Compl*. [*Doc. 14*].

Essentially, Hinds County has moved for judgment on the pleadings by asserting that Plaintiff's Amended Complaint fails to state a claim against Hinds County for the following reasons: (1) Defendant Smith is an elected State official, not a county official and the district attorney's office is an "arm of the state", not a county office; (2) Plaintiff was not employed by Hinds County; and (3) Plaintiff's state law claims are barred by the doctrine of sovereign immunity under the Mississippi Tort Claims Act (MTCA). *Def.'s Mot. Dismiss Pl.'s Compl*. [*Doc. 14*].

## STANDARD OF REVIEW

Motions to dismiss are regarded with disfavor and are seldom granted. *Shipp v. McMahon,* 199 F.3d 256, 260 (5th Cir. 2000). The standard of review for a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion to dismiss. *Guidry v. Am. Pub. Life Ins. Co.,* 512 F.3d 177, 180 (5th Cir. 2007). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.,* 61 F.3d 288, 289 (5th Cir. 1995). The complaint must be liberally construed with all reasonable inferences drawn in the light most favorable for the plaintiff. *Sloan v. Sharp,* 157 F.3d 980, 982 (5th Cir. 1998).

In deciding a Rule 12(c) motion, a court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theories that could be established consistent with the allegations in the complaint. *Jones v. Greninger,* 188 F.3d 322,

324 (5th Cir.1999). A judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain. *Hebert Abstract Co. v. Touchstone Properties, Ltd.,* 914 F.2d 74, 76 (5th Cir.1990).

## I.     FEDERAL CLAIMS

**A.     Plaintiff's Title VII Claims against Hinds County, Mississippi for race and gender discrimination and retaliation should not be dismissed.**

In its motion to dismiss, Defendant claims that Plaintiff's Title VII claims for race and gender discrimination and retaliation must be dismissed because Plaintiff was not employed by Hinds County. *Def.'s Mot. Dismiss Pl.'s Compl.* [*Doc. 15*]. Defendant claims that, for purposes of Title VII, the term "employee" does not include an elected official, such as Defendant Smith, or a member of his personal staff. *Def.'s Memo Support Mot. Dismiss* at 5.

In the context of Title VII claims, there are exceptions to the general rule of who is an "employee." However, Defendant failed to complete the analysis and application of the meaning of "employee" under Title VII. A thorough analysis of what constitutes a Title VII "employee" will demonstrate that Plaintiff has standing to bring suit against Hinds County, Mississippi pursuant to Title VII for race and gender discrimination and retaliation. Therefore, Plaintiff's claims should not be dismissed.

Section 2000e(f) of Title 42 provides:

The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

*42 U.S.C.A. § 2000e(f)* (West).

Defendant claims that Title VII claims should be dismissed because Defendant Smith is an elected public official and Plaintiff was chosen by Smith to be a member of his personal staff. *Def.'s Memo Support Mot. Dismiss* at 5. A person who is employed by a District Attorney is not automatically exempted from the application of Title VII based solely on the "personal staff exemption."

While Title VII does not define the "personal staff exception," the Fifth Circuit has set forth a non-exhaustive list of six factors (the *"Teneyuca* factors") for determining whether a plaintiff is a member of an elected official's "personal staff." *Teneyuca v. Bexar County,* 767 F.2d 148 (5th Cir. 1985). The factors are:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Jackson v. Watkins*, CIV.A. 3:07-CV-1837-, 2009 WL 1437824, at *4 (N.D. Tex. May 21, 2009), aff'd, 619 F.3d 463 (5th Cir. 2010) citing *Teneyuca at* 151.

Courts have refused to grant motions to dismiss Title VII claims after applying the "*Teneyuca*" factors and determining that genuine issues of material facts existed regarding the personal staff exception. *See, e.g. Montgomery v. Brookshire*, 34 F.3d 291 (5th Cir. 1994) (finding that a genuine issue of material fact existed regarding the personal staff exemption applied, thus precluding summary judgment in Title VII action brought against county); *Quest v. Bandera County*, 5:13-CV-00506-DAE, 2013 WL 6835147, at *5 (W.D. Tex. Dec. 26, 2013) (stating that analysis of county as "employer" and determination of whether plaintiff is county agent involves fact questions that should not be resolved on a motion to dismiss); *Pub. Health*

*Equip. & Supply Co., Inc., v. Clarke Mosquito Control Prods., Inc.,* 410 F. Appx 738, 741 (5th Cir. 2010) (determining that questions of fact regarding the application of employee exception are not suitable for resolution on a Rule 12(b)(6) motion to dismiss); *see also Canales v. Jim Wells Cnty.,* No. C–12–171, 2012 WL 3262432, at *3 (S.D. Tex. Aug., 2012) (denying the defendant's motion for judgment on the pleadings for defendant in Title VII action based on analysis of the statutory term "employer"); *Saddler v. Quitman County Sch. Dist.,* 278 Fed. Appx. 412, 417 (5th Cir. 2008) (determining that application of the personal staff exception involves an inquiry of facts and "does not lend itself well to disposition by summary judgment." (quoting *Teneyuca,* 767 F.2d at 152)).

**B.      Plaintiff's First Amendment and Due Process Claims pursuant to 42 U.S.C. § 1983 against Hinds County, Mississippi should not be dismissed.**

Defendant erroneously claims that it cannot be liable for Defendant Smith's violation of Plaintiff's First Amendment and Due Process rights under § 1983 because Smith is not employed by Hinds County. *Def.'s Memo Support Mot. Dismiss* at 7-8.      Defendant is misguided. Hinds County is liable for the violation of Plaintiff's constitutional rights.

Title 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.A. § 1983.

The seminal case creating municipal liability under § 1983 is *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978). In *Monell*, the U.S. Supreme Court held that

"Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Id.* at 690. Municipal or county liability under § 1983 requires proof of three elements: a policymaker, an official policy; and a violation of constitution right whose moving force is the policy or custom. *Id.* at 658. The Court determined that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official capacity, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

Local governments may be sued for damages, as well as declaratory and injunctive relief, whenever constitutional violations are a result of a governmental "custom" **even though a custom has not received formal approval through the body's decision making channels**. *Id.* (emphasis added). Further, "the permanent and well settled practice by state officials to implement unauthorized, unwritten policy or custom can establish a 'custom or usage' which will take on the force of law." *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 167-168 (1970).

### The Policymaker

Pursuant to Mississippi statutory law, members of the Board of Supervisors are the final policymakers for Hinds County. *See generally* Miss. Code Ann. § 19-3-1 to 85; 19-4-1 to 9; 19-11-1 to 27. The Hinds County Board of Supervisors are granted the statutory authority for developing policies that are in the best interest of the citizens and that provide the framework for how the county will function. *Id.* These policies must be carried out with attention to sound fiscal management of county funds and proper oversight of county property. *Id.*

Generally, the Hinds County Board of Supervisors has policymaking authority regarding all county affairs and assets, including but not limited to, tax levies, courthouses, county-owned

real property, appropriation of funds, contractual powers, as well as other powers expressly authorized by law. *See* Miss. Code Ann. § 19-3-41(1).

Some of the statutory duties and responsibilities of the Hinds County Board of Supervisors includes delivery of services, assistance, and administration of county funds as follows:

> . . . perform and exercise any duty, responsibility or function, may enter into agreements and contracts, may provide and deliver any services or assistance, and may receive, expend and administer any grants, gifts, matching funds, loans or other monies, in accordance with and as may be authorized by any federal law, rule or regulation creating, establishing or providing for any program, activity or service.

Miss. Code Ann. § 19-3-41(9).

The policymaking of the Hinds County Board of Supervisors also includes, but is not limited to purchasing and maintaining electronic equipment and records in county offices as follows:

> . . . **expend** funds to purchase, maintain and repair equipment for the electronic filing and storage of filings, files, instruments, documents and records using microfilm, microfiche, data processing, magnetic tape, optical discs, computers or other electronic process which correctly and legibly stores and reproduces or which forms a medium for storage, copying or reproducing documents, files and records for use by one (1), all or any combination of county offices, employees and officials, whether appointed or elected.

Miss. Code Ann. § 19-3-41(7).

Moreover, the Hinds County Board of Supervisors has the responsibility to hire a County Administrator to manage the day-to-day operations of the county. The Board must monitor and hold the County Administrator accountable for carrying out all of the assigned duties and responsibilities. Miss. Code Ann. § 19-4-7. These duties and responsibilities include, but are not limited to the following:

- carry out the policies adopted by the board of supervisors;

- exercise supervision over the boards or other divisions of county government, except for the sheriff's department, financed in whole or in part through taxes levied on county property
- make inquiry of any person or group using county funds appropriated by the board of supervisors as to the use or proper use of such funds and shall report to the board of supervisors as to such findings;
- act as the liaison officer to work with the different divisions of county government and agencies to ensure that county-owned property is properly managed, maintained, repaired, improved, kept or stored;
- ensure that all orders, resolutions and regulations of the board of supervisors are faithfully executed;
- report to the board regularly about the affairs of the county and keep the board fully advised regarding the financial condition of the county and upcoming financial needs;
- inform the board of supervisors regarding federal and state laws and regulations which affect the board of supervisors and the county,
- collect inquiries and complaints from citizens of the county regarding the operation of county government, investigate such inquiries and complaints, and shall report the findings to the board;
- meet regularly with the board of supervisors and have full privileges of discussion but no vote;
- perform any and all other administrative duties that the board of supervisors could legally perform themselves and that they can legally delegate without violating the laws of the state nor impinging upon the duties set out by law for other officers.

Miss. Code Ann. § 19-4-7

Based on Mississippi statutory law the members of the Board of Supervisors are the policymakers for Hinds County. However, this policymaking authority can be delegated to the County Administrator with the responsibility for oversight and approval ultimately remaining with the Hinds County Board of Supervisors.

**Official Policy**

The Fifth Circuit has defined an official policy as it relates to § 1983 by stating: " '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.' " *Okon v. Harris County Hospital District*, 426 Fed.Appx. 312, 316

(5th Cir.2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984)(*en banc*), *cert. denied*, 472 U.S. 1016 (1985). Then again, a policy may be " 'a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.' " *Id.*

The persistent widespread practice of the Hinds County Board of Supervisors of funding certain programs and operations in the office of the Hinds County District Attorney without oversight or accountability constitutes a custom that represents municipal policy.  Over the years, the board of supervisors has poured taxpayer money into the operation of the Bad Check Unit in the district attorney's office. This financial support has occurred even in the midst of possible litigation, mismanagement of resources, and failure by Defendant Smith to repay certain funds to the county.

The board of supervisors has dealt with and discussed these issues for years, yet continues to fund the operation of the Bad Check Unit without any oversight or a system of "checks and balances".   As a result, many thousands of dollars of county funds have been spent to fund a dysfunctional operation whose computer system was utilized by a person facing felony charges to retrieve information for use in threatening, frightening, harassing, coercing, and intimidating Plaintiff. This municipal policy is responsible for the violation of Plaintiff's constitutional rights.

Municipal liability under 42 U.S.C. § 1983 arises if injury results from "action pursuant to official municipal policy of some nature." *Monell,* 436 U.S. at 691. Designation of the official or body accountable for the challenged policy is a matter of state law and is determined by the court. *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989); *City of St. Louis v. Praprotnik,*

485 U.S. 112, 124(1988). The Court in *Jett* made it clear that liability for the municipality will attach when there has been acceptance of a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." (*Jett,* 491 U.S. at 737, internal citations omitted.)

Liability for Hinds County is clear because of its acceptance of the standard operating procedure of funding, without oversight, the Bad Check Unit and other programs in the district attorney's office. Further, Hinds County is liable because of the actual and/or constructive knowledge of the dysfunction within the Hinds County District Attorney's Office. *See Okon v. Harris County Hospital District*, 426 Fed.Appx. 312, 316 (5th Cir.2011), *quoting Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984)(*citations omitted*) (finding that policymaker or designee must have actual or constructive knowledge of custom).

The Hinds County Board of Supervisors had actual knowledge of events within the district attorney's office that could lead to constitutional violations of the rights of the citizens of Hinds County. Such events were public knowledge because of publication in the press and on the airwaves.  In addition, the board of supervisors discussed certain issues at their meetings that showed actual knowledge. In the alternative, because of the high degree of publicity surrounding issues in the district attorney's office, the board of supervisors would have possessed constructive knowledge if properly carrying out the statutory duties and responsibilities assigned to it. *Id., citing Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir.1984)(citations omitted).

**Violation of Plaintiff's Constitutional Rights**

Defendant Hinds County and its Board of Supervisors, as policy-makers for the county and being charged with the oversight of the expenditure of taxpayer's money, caused a constitutional violation of plaintiff's clearly established federally protected rights by their

conscious decisions, policies, practices, and customs to allow the bad check unit to receive county funds without oversight of proper use. The lack of oversight created a fertile atmosphere in the district attorney's office for a person facing felony charges to breach the security of the computer system of the Bad Check Unit. This data breach provided information that was used in a conspiracy scheme, by using the U.S. Mail, to threaten, frighten, harass, coerce, and intimidate Plaintiff.

**C.** **Plaintiff's Civil Conspiracy Claim against Hinds County, Mississippi should not be dismissed.**

Defendant states that Plaintiff failed to cite to a specific statute regarding her conspiracy claim. Motions to dismiss for failure to state a claim are not favored because the Federal Rules of Civil Procedure "require only 'notice' pleading—that is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" *Mahone v. Addicks Utility District of Harris County,* 836 F.2d 921, 926 (5th Cir.1988), citing *Conley v. Gibson,* 355 U.S. 41, 47 (1957) (quoting Fed.R.Civ.P. 8(a)(2)).

Pursuant to Mississippi law, the elements of a civil conspiracy are: "(1) two or more persons or corporations; (2) to accomplish an unlawful purpose or a lawful purpose unlawfully; (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors, Inc.,* 117 So3d 331 (Miss. Ct. App. 2013) (citing *Gallagher Bassett Services, Inc. v. Jeffcoat*, (Miss. 2004)).

Plaintiff has stated sufficient facts to assert a conspiracy claim under 42 U.S.C. § 1983 and state law. In paragraphs 44 – 50, and 59 of her Amended Complaint, Plaintiff provided information regarding the conspiracy against her and the overt act in furtherance of the conspiracy. In addition, Plaintiff attached the "anonymous" letter that is evidence of the overt

act. In paragraphs 73-79, Plaintiff provides information relevant to the damages she suffered as a result of the conspiracy.

As shown, Plaintiff sufficiently pled a claim for civil conspiracy under 42 U.S.C. § 1983 and state law. Therefore, Defendant's request that Plaintiff's civil conspiracy claim be dismissed for failure to state a claim should be denied. In addition, this claim is plausible on its face against Hinds County because the official policy and/or custom of the Hinds County Board of Supervisors led to the violations of Plaintiff's constitutional rights. *See* Discussion of Hinds County Liability, pages 10-15, *supra*.

**D.      Plaintiff's Claims for violation of the Computer Fraud and Abuse Act (the "CFAA") Title 18 U.S.C. §1030(a)(5)(A) against Hinds County, Mississippi should not be dismissed.**

Defendant maintains that Plaintiff's claims for violation of the CFAA against Hinds County should be dismissed. Defendant acknowledges that Plaintiff asserted claims that Defendant Smith allowed the retrieval and misappropriation of Plaintiff's personal confidential data in violation of the CFAA. *Am. Compl*., p. 21. However, Defendant claims that it cannot be held responsible for Smith's conduct. Defendant is mistaken. Hinds County is responsible for Defendant Smith's conduct as part of a conspiracy to access and use the information in the computer system of the Bad Check Unit against Plaintiff. *See generally* 18 U.S.C. § 1030 et seq.

Plaintiff suffered damages, greater than the statutory base of $5,000, as a result of the breach of the security of the computer system in violation of the CFAA. *Id.* Hinds County is responsible for Defendant Smith's retrieval and misappropriation of Plaintiff's protected information. *See* Discussion of Hinds County Liability, pages 10-15, *supra*. Therefore, Plaintiff's claims for violation of the CFAA should not be dismissed against Hinds County.

**II.      State Law Claims Pursuant to Mississippi Tort Claims Act (MTCA)**

1.      **Wrongful Discharge in Violation of Public Policy**

Defendant erroneously claims that Plaintiff's claims from wrongful discharge in violation of public policy should be dismissed. In her Amended Complaint, Plaintiff states a plausible claim against Defendants. Plaintiff states facts sufficient to support her claim for violation of public policy in that she was terminated for reporting illegal conduct. As such, Plaintiff engaged in protected activities regarding public policy and was protected from termination by statutory law. *See* Miss. Code Ann. § 25-9-171 to 177.

Further, Plaintiff's constitutional rights were violated as a result of her refusing to participate in an illegal act and/or reporting illegal acts to Defendant Smith. The retaliation that resulted violated public policy and the U.S. Constitution. As such, Hinds County is liable for the violations of Plaintiff's constitutional rights. *See* Discussion of Hinds County Liability, pages 10-15, *supra*. Therefore, Plaintiff's claims for wrongful discharge in violation of public policy should not be dismissed against Hinds County.

2.      **Intentional Infliction of Emotional Distress**

Defendant argues that Plaintiff's claim for intentional infliction emotional distress should be dismissed because Plaintiff alleges that Defendant Smith acted with malice, and therefore, as a governmental entity, it is immune from liability under the Mississippi Torts Claims Act (MTCA). However, Plaintiff's intentional infliction of emotional distress claim is not based solely on malice. In *Delaney v. Mississippi Department of Public Safety*, 2013 WL286365, at *5 (S.D. Miss. 2013), the court recognized that, under the MTCA, immunity is not waived and a governmental entity cannot be held liable for an employee's action that constitutes any of the following: (1) fraud, (2) malice, (3) libel, (4) slander, (5) defamation or (6) any criminal offense other than traffic violations. *See* Miss. Code Ann. § 11-46-5(2). In that case, the plaintiff's

claim for intentional infliction of emotional distress was dismissed against the governmental entity because the claim was "expressly grounded on allegedly malicious conduct." *Id.* At *6.

However, the Mississippi Supreme Court has held that an intentional infliction of emotional distress claim falls outside the MTCA o*nly to the extent that the claim is predicated on malicious conduct.  Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (Miss. Ct. App. 2011).  Notably, the court determined that "the trial judge correctly reviewed the claim for intentional infliction of emotional distress under the directed-verdict standard, as a finding of malice would have been for the jury to decide." *Id.*   The court affirmed the trial court's dismissal of the intentional infliction of claim, not because the plaintiff alleged malice, but because there was no evidence of outrageous conduct on part of the defendants. *Id.* at 65.

To establish a claim for intentional infliction of emotional distress, the plaintiff must show the following: (1) that the defendant's actions were willful or wanton; (2) that the defendant's actions were outrageous or repulsive (3) that the defendant's actions were "directed at" the plaintiff or done with the intent to cause the plaintiff harm; (4) that the defendant's actions caused the plaintiff to suffer severe emotional distress; and (5) that the emotional distress was a foreseeable result of the defendant's actions. *Carter v. Reddix*, 115 So. 3d 851, 858 (Miss. App. 2012).

In Count VIII of her Complaint, Plaintiff asserts that Defendant's actions directed toward her were outrageous and willful. *See Am. Compl.* ¶¶ 123, 125.  Plaintiff further asserts that Defendant's actions caused her to suffer extreme emotional distress and that such distress was reasonable foreseeable. *Id.* ¶ 125.  Although Plaintiff also states that Defendant Smith's conduct was malicious and wanton, her claim based on Defendant Smith's outrageous conduct should not be dismissed as Defendant may be held liable for such conduct under Mississippi law.

In addition, this claim is plausible on its face against Hinds County because the official policy and/or custom of the Hinds County Board of Supervisors led to the violations of Plaintiff's constitutional rights. *See* Discussion of Hinds County Liability, pages 10-15, *supra*.

3.      **Invasion of Privacy**

Defendant erroneously claims that Plaintiff failed to provide allegations explaining the invasion of privacy claim.  The Amended Complaint contains facts specific to the sub-tort of intentional intrusion upon the seclusion of Plaintiff's privacy as follows:

> 127.  As set forth herein, Defendants, and each of them, intruded into Plaintiff's seclusion or personal life by searching for and retrieving check unit document in the confidential check unit database.

> 128.  At no time did Plaintiff consent to such intrusion.  Plaintiff had a reasonable expectation in privacy regarding these documents.  Such intrusion was highly offensive to Plaintiff and would also be highly offensive to a reasonable person.

*Am. Compl.*, ¶¶ 127–128.

Plaintiff has pled facts sufficient to support a § 1983 claim involving a conspiracy to publish private information from the data in the computer of the Bad Check Unit. Plaintiff claims that there was an agreement between a state official and others to commit an illegal act which violated Plaintiff's constitutional rights. As such, Hinds County is liable for the violations of Plaintiff's constitutional rights. *See* Discussion of Hinds County Liability, pages 10-15, *supra*. Therefore, Plaintiff's claims for invasion of privacy should not be dismissed against Hinds County.

**CONCLUSION**

For all of the reasons stated and authorities cited herein, Plaintiff's claims against Hinds County, Mississippi should not be dismissed.

                                        Respectfully submitted,

                                        **GALE NELSON WALKER**, Plaintiff

By:   /s/ Chuck McRae
                                             Chuck McRae, MSB # 2804


Chuck McRae, MSB #2804
Gale N. Walker, MSB #101109
**McRae Law Firm, PLLC**
416 East Amite Street
Jackson, Mississippi 39201
Office: 601.944.1008
Facsimile: 866.236.7731
Email: chuck@mcraelaw.net


                      <u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that I have this day electronically filed the foregoing with the Clerk of

the Court using the ECF system, which sent notification of such filing to the following:

        William R. Allen
        Jessica S. Malone
        Allen, Allen, Breeland & Allen, PLLC
        214 Justice Street
        P.O. Box 751
        Brookhaven, MS  39602

        Peter Teeuwissen
        Peter Teeuwissen, PLLC
        P.O. Box 16787
        Jackson, MS  39236

        Robert E. Sanders
        Young Wells Williams P.A.
        141 Township Avenue, Suite 300
        P.O. Box 6005
        Ridgeland, MS  39158-6005

This the 4th day of November, 2016.

                                                   /s/ Chuck McRae

                                            Chuck McRae, MSB # 2804