IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GALE NELSON WALKER                                        PLAINTIFF

V.                                                          CASE NO. 3:15-cv-911-DPJ-FKB

ROBERT SCHULER SMITH, individually
and in his official capacity as District
Attorney of Hinds County, Mississippi and
John or Jane Does 1-10                               DEFENDANTS

**ORDER**

Before the Court is Plaintiff Gale Nelson Walker's Amended Motion to Compel [118]. For the reasons described below, the Court finds that the motion should be granted in part and denied in part.

**Procedural and Factual History**

Walker previously worked as an Assistant District Attorney in Hinds County, Mississippi. She alleges that in January 2014, Defendant Robert Schuler Smith wrongfully terminated her employment. [76] at 16, 21. Smith claims he terminated her employment because he discovered that she had "a history of writing worthless checks" and had written a "false and deceitful" letter using District Attorney's Office letterhead to a storage facility to which she owed money. [121-3] at 1-2. Walker's Second Amended Complaint advances a litany of claims against Smith, including that her termination was the result of race and gender discrimination. *See* [76]. Walker is African American. *Id.* at 1.

Walker propounded interrogatories and requests for production of documents to Smith on March 6, 2017. She contends that Smith has not provided sufficient responses to Interrogatory

1

Nos. 6 and 7, and Request for Production Nos. 10 and 26.[1]

   **1. Interrogatory No. 6**

Walker claims that in October 2013, a Hinds County Public Defender handed her a letter written anonymously by an individual who claimed to be charged with a felony. [76] at 11. According to Walker, the letter, postmarked July 19, 2013, contained information about worthless checks Walker had written. *Id.* After receiving the letter, Walker claims that she spoke with an individual who worked in the District Attorney's Office's Worthless Check Unit and asked her if she knew anything about the letter.[2] *Id.* at 12. The employee responded that she did not. *Id.* She informed Walker that besides herself, only two other employees in the District Attorney's Office, one of whom was Smith, could access information in the Worthless Check Unit's computer system. *Id.* Walker claims that the employee gave her printouts that showed she had written worthless checks "many years ago (10-18 years) and that restitution had been paid. . . ." *Id.* (parenthetical in original). Walker met with Smith shortly afterwards. *Id.* She says that she "raised concerns . . . that the security had been breached in the computer system for the check unit." *Id.* She contended that "someone had breached the security to actively, purposely, and with malicious intent seek information to use to threaten, coerce, harass, and intimidate a citizen of Hinds County, Mississippi and an officer of the court." *Id.* at 13.

Walker's Second Amended Complaint accuses Smith of either being aware of, or taking part in, a conspiracy which involved someone accessing her records in the Worthless Check Unit's computer system. *Id.* at 23-24. Walker alleges that "[t]wo or more defendants acted unlawfully to retrieve information about Plaintiff's check writing history from the secured computer system in

---

[1] Walker also sought an order compelling responses to Interrogatory Nos. 4 and 15. However, she withdrew that portion of her Amended Motion to Compel after receiving supplemental responses from Smith. *See* [124] at 1.
[2] Walker uses the terms "Bad Check Unit" and "Worthless Check Unit" interchangeably. For consistency, the Court uses the title "Worthless Check Unit" throughout.

2

the Bad Check Unit." [76] at 24. She states that the defendants "acted in concert and engaged in a conspiracy designed to harass, threaten, and intimidate, the Plaintiff by using the information. The defendants utilized the United States Mail to further their conspiracy." *Id.* She further alleges that Smith "intruded into Plaintiff's seclusion or personal life by searching for and retrieving check unit documents in the confidential check unit database." *Id.* at 26.

    Walker propounded the following interrogatory to Smith:

Interrogatory No. 6: Identify any user who has accessed and/or retrieved Plaintiff's files in the Worthless Check Unit from the time the files were created until the present time. Include:
    a. the identity of the person;
    b. job title;
    c. job description;
    d. date of creation of file(s);
    e. date of access to file(s)
    f. password used to access the data;
    g. description of data viewed and/or retrieved;
    h. location of pc that was used to access the data;
    i. documentation of the reason for the access/retrieval;
    j. if this information is not available, please list the reason(s) why it is not available.

[119] at 8.

    Smith responded to this interrogatory on April 5, 2017. [118-1] at 4-5. He provided supplemental responses on January 11, 2018, and February 8, 2018. [118-3] at 2-3, [118-4] at 1-3. Walker takes issue with Smith not producing a log of individuals who accessed the Worthless Check Unit's computer system in or around June and July 2013. [119] at 10-12. Smith's Second Supplemental Response includes a report by Mr. Ben Duncan which explains that login information for the computer system at issue is usually "rolled" every seven days. [121-2] at 1-2. Despite the seven-day login roll-off, the report includes some login information for the two months prior to the reports creation in January 2018. *See id.* Duncan's report also includes a list of print jobs, including the user information, from 2012 and 2013. *Id.* at 3-16. The report explains that,

3

unlike the login information, the print logs have never been reset, and are still available. *Id.* at 3.

Walker contends that the response and report are not "specific to Plaintiff's request" because they do not specifically address access to her worthless check file. [119] at 13. However, Smith's response to Interrogatory No. 6(e) is responsive, as it explains why the login information Walker seeks is unavailable. Additionally, the response includes all available login information at the time of the interrogatory response, and provides the additional information concerning all print jobs from 2012 and 2013, which could conceivably be useful to Walker. *See* [121-2].

Walker contends that the login information is only unavailable because Smith did not properly preserve it. *See* [119] at 11-12. She argues that Smith "was made aware of the importance of Plaintiff's check unit documents when Plaintiff's complaint was filed on July 13, 2015." *Id.* at 11. However, that was nearly two years after the time period Walker alleges someone improperly logged into the Worthless Check Unit's computer system to access her check history. Based on the information in the report, the login data would have been lost long before the complaint was filed. Even if Smith had acted to preserve the login data on October 15, 2013 - the day Walker alleges she first brought the issue to his attention - the report indicates that the login information Walker seeks would have already been lost. *Compare* [76] at 11 *with* [121-2] at 1-2 (indicating that login information rolls off after seven days, and only recovering some login information for previous two months). Walker has presented no evidence that the unavailability of the information she seeks is the result of intentional spoliation by Smith.

Walker also contends that she should be permitted to take the deposition of the individual who created the report at issue. [119] at 13. Discovery in this matter closed November 2, 2017. This motion was filed more than three months later. However, an email from defense counsel indicates that he only became aware of Duncan's identity in January 2018, and only provided the

report at issue to Walker on January 31, 2018. [118-15] at 1-2; [119] at 13. As Smith is relying on Duncan's report and analysis as part of a discovery response provided three months after the close of discovery, the Court finds that there is good cause to permit Walker to take Duncan's deposition out-of-time. However, the topics of the deposition shall be limited to the following: Duncan's report, the computer system at issue, and the information sought in Interrogatory No. 6.

### 2. Interrogatory No. 7

Walker next challenges Smith's response to the following interrogatory:

> Interrogatory No. 7: Describe in detail any and all amnesty programs sponsored by you/your office for persons with checks in the Hinds County Worthless Check Unit. State the purpose, goal(s), and the dates for each amnesty program for the years 2010 to present.

[118-1] at 5-6. Walker response states:

> Approximately once a year an amnesty was declared. Exact dates are not known. The District Attorney's Office would try to time the amnesty to coincide with amnesty programs initiated by the City of Jackson. A temporary amnesty is intended to give persons who have written worthless checks one last opportunity to make the checks good before criminal proceedings are started.

*Id.*

In her motion to compel, Walker contends that information from the annual amnesty program is relevant. [119] at 14; [124] at 2. However, in his response to Interrogatory No. 7, Smith never contended otherwise. [118-1] at 5-6. Instead he responded that he did not possess some of the information requested. *Id.* Walker makes no argument that Smith's response is incomplete, nor does she contend that he is an under an obligation to provide additional information. *See* [119] at 14. Accordingly, Walker's motion as to Interrogatory No. 7 is denied.

### 3. Request for Production of Documents No. 10.

Walker claims that Smith discriminated against her as compared to four other Assistant District Attorneys ("ADAs"). Request for Production No. 10 asks for Smith to produce a copy of

5

each attorney's personnel file. Walker argues that because her complaint contains employment discrimination claims, she is entitled to the files of comparators. *See* [119] at 15-17. She explains that she believes each of the four attorneys is similarly situated to her, yet was treated differently by Smith under nearly identical circumstances. *Id.* at 16. Specifically, she claims that two of the attorneys committed infractions, but were not terminated, and two others were terminated, but treated more favorably by Smith afterward. *Id.* Besides these specific events, she provides no explanation for what she expects to find in the personnel files or why she believes that production of the files is necessary to prove any of her claims. *See id.* at 15-17.

"A court may order production of personnel files of a discrimination plaintiff's comparators if the information contained therein may be relevant to show that a defendant's reasons for terminating a plaintiff were pretextual." *Drechsel v. Liberty Mut. Ins. Co.*, No. 3:14-CV-162-M-BN, 2015 WL 6865965, at *5 (N.D. Tex. Nov. 9, 2015)(citing *Jepsen v. Florida Bd. of Regents*, 610 F.2d 1379, 1384-85 (5th Cir. 1980)). "Personnel files are generally discoverable in Title VII litigation, as they could provide circumstantial evidence of pretext, such as revealing disparate treatment of coworkers who were guilty of infractions more serious than that of the plaintiff." *Bounds v. Capital Area Family Violence Intervention Ctr., Inc.*, No. CA 14-802-JJB-RLB, 2016 WL 1089266, at *4 (M.D. La. Mar. 18, 2016). "In a case involving claims for disparate treatment, the plaintiff is entitled to discovery of comparator data only for 'similarly situated' employees." *Gordon v. Greenville Indep. Sch. Dist.*, No. 3:13-CV-0178-P, 2014 WL 6603420, at *2 (N.D. Tex. Nov. 20, 2014). "A 'similarly situated' employee is one who was treated differently under 'nearly identical' circumstances." *Id.*; *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir.1995).

> To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified

6

for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

Smith contends that the four ADAs are not proper comparators. [121] at 5-7. Specifically, he contends than none of the events described by Walker amount to "nearly identical circumstances" to her own. *Id.* at 6-7.

The four ADAs were similarly situated to Walker. Like Walker, each was an Assistant District Attorney who reported to District Attorney Smith. Walker alleges that two of the ADAs committed infractions similar to hers, but were allowed to remain as employees. She claims that one ADA, Ms. Mayfield, improperly wrote a letter on District Attorney's Office letterhead, just as Walker had done, but was not terminated. *See* [119] at 17-18. She points to this as evidence of race discrimination, as Mayfield is white.

Smith disputes that Mayfield's letter is similar to Walker's. Walker allegedly sent a letter dated July 12, 2013, on District Attorney's Office letterhead, to a storage facility regarding a personal debt she owed. [112-4]. Smith cites this letter as one of the two reasons he terminated her employment. [121-3] at 1-2. Similarly, Mayfield also sent a letter on District Attorney's Office letterhead. *See* [118-17]. However, her letter was to a state court judge in front of whom the District Attorney's Office practiced, and appears to have been related to the business of the Court and staffing at the District Attorney's Office. *Id*. Smith may well be correct that the circumstances of the two letters are different and warranted different levels of reprimand. However, he did write that Mayfield's letter was written "without [his] authorization or knowledge," and that he had "handled that discrepancy internally." [118-18] at 1. The Court finds that the portion of Mayfield's personnel file pertaining to the letter and any related disciplinary action is discoverable and should

7

be produced.

Next, Walker contends that Smith did not punish a white male ADA "for personal conduct that was damaging to the District Attorney's [O]ffice." [119] at 18. She alleges that the ADA "was intoxicated one evening and used his [ADA] badge to exert influence and make a scene in a public bar." *Id.* According to Walker, he left the bar while intoxicated, but was stopped by police, and "again used his badge to exert influence as an [ADA]." She claims that Smith then "got out of his bed during the night and went to the traffic stop location to take the intoxicated male employee home." *Id.* She also contends that a social media post by the same ADA was used "as a factor for [a judge] to consider in granting . . . a change of venue" in a criminal prosecution, "cost[ing] the taxpayers of Hinds County a tremendous amount of money." *Id.* at 19. The Court finds that the portion of this ADA's personnel file that pertains to either of the two alleged incidents described by Walker, or any disciplinary proceedings which stem therefrom, should be produced.

Next, Walker alleges that Smith treated two non-African American male ADAs more favorably than he did her after he terminated their employment. *Id.* at 20. According to her, "[a]fter their termination, they were permitted to continue to freely come and go in the office. Smith allowed them to remain on payroll for weeks. They were also allowed to pack their own offices and leave when they were ready to leave." *Id.* She claims that, "[t]his contrasts with the way [Smith] treated [her] in that he had a team of people pack most of her belongings and deliver them to her at the restaurant where she was fired." *Id.* She claims that this is "clear evidence of race and sex discrimination." *Id.*

Walker does not explain how the personnel files of these two ADAs would be relevant to showing how they were given their personal possessions after being terminated. However, an implication in Walker's allegations is that the two non-African American ADAs continued to

8

receive their salary after they were terminated, but that she did not. The portions of their personnel file that show their date of termination, and whether they continued to receive a salary following their termination, are relevant and must be produced.

Besides the portions previously identified by the Court, Walker has made no showing as to the relevance of any other portion of the four ADA personnel files. Accordingly, to the extent Walker seeks other portions of these personnel files, her motion is denied.

In ordering the production of portions of these four personnel files, the undersigned makes no finding that Walker has met the legal test to show that any of these four ADAs are comparators. Rather, the undersigned finds only that Walker has made a showing sufficient to render portions of the personnel files discoverable on the issue of whether they may be comparators.

The portions that the Court has ordered produced of each of the four personnel files shall be subject to a protective order. The Court orders the parties to meet and confer to attempt in an attempt to draft an agreed proposed protective order. The parties are to submit the proposed agreed order, or separate proposed orders if they are unable to agree, to the Court by May 25, 2018.

4. **Request for Production of Documents # 26**

Walker requests complete copies of any and all insurance policies that may provide coverage for any award in this matter. [118-2] at 8. Smith responded that no such policy exists, and that the only coverage available would be that provided through the Mississippi Tort Claims Act. *Id.*

Walker does not explain her objection to Smith's response. [119] at 15. She implies that she does not believe Smith has done enough to gather necessary information, but gives no further explanation. Smith's response appears complete, however. Her motion as to this request is, therefore, denied.

**Conclusion**

Walker's Amended Motion to Compel [118] is granted as to the following:

1. Walker is permitted to take Ben Duncan's deposition out-of-time. The topics of that deposition shall be limited to his report, the computer system at issue, and the information sought in Interrogatory No. 6. The Court sets a deadline of June 1, 2018, for Walker to complete Duncan's deposition.

2. Smith must produce the portions of the ADA personnel files identified above. That production will be subject to a protective order. The Court sets a deadline of May 25, 2018, for the parties to submit the proposed protective order(s) to the Court. Smith must produce the identified portions of the four ADA personnel files within seven days of the Court entering the protective order.

All other requested relief is denied.

So ORDERED, this the 16th of May, 2018.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE