UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GALE N. WALKER                                                                    PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:15-CV-911-DPJ-FKB

ROBERT S. SMITH                                                                  DEFENDANT

ORDER

Plaintiff Gail Walker says her former employer, Hinds County, Mississippi, District

Attorney Robert Schuler Smith, terminated her employment because she exercised her First

Amendment right to free speech.  That claim is now before the Court under Federal Rule of Civil

Procedure 56, and for the following reasons, the Court concludes that Smith is entitled to

qualified immunity.

I.        Background

Smith hired Walker as an Assistant District Attorney ("ADA") but terminated her

employment in January 2014.  Walker then sued Smith under eight legal theories, all but one of

which were dismissed on summary judgment.  *See* Feb. 5, 2019 Order [160].  The only

remaining cause of action is Walker's First Amendment retaliation claim under 42 U.S.C.

§ 1983.

According to Walker, Smith fired her, in part, because Walker exercised her right to free

speech when she contacted the Mississippi Bureau of Investigation ("MBI") to report an alleged

computer hack within the district attorney's office.  Unfortunately, Smith failed to address this

claim in his motion for summary judgment.  *See* Feb. 5, 2019 Order [160] at 18–20.  But the

Court expressed concern regarding its viability.  *Id.*  So, the Court reserved ruling and ordered

Walker to "show cause why [it] should not find that she spoke as an employee" and explain why

"Smith would not be entitled to qualified immunity under the circumstances." *Id.* at 20. Walker

briefed the issues, as did Smith, but she declined to file a reply. The briefing is therefore closed.

II.     Standards

    A.     Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when

evidence reveals no genuine dispute regarding any material fact and that the moving party is

entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.

2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

B.    Qualified Immunity

Smith asserted qualified immunity in his answer.  *See* Def.'s Ans. to Am. Compl. [77] at

1.  Walker therefore carries the burden "to demonstrate the inapplicability of the defense."

*McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  As the Fifth Circuit has

summarized:

> [T]he doctrine of qualified immunity protects government officials from civil
> damages liability when their actions could reasonably have been believed to be
> legal.  This immunity protects all but the plainly incompetent or those who
> knowingly violate the law.  Accordingly, we do not deny immunity unless
> existing precedent must have placed the statutory or constitutional question
> beyond debate.  The basic steps of this court's qualified-immunity inquiry are
> well-known:  a plaintiff seeking to defeat qualified immunity must show: (1) that
> the official violated a statutory or constitutional right, and (2) that the right was
> clearly established at the time of the challenged conduct.

*Anderson v. Valdez,* 845 F.3d 580, 599–600 (5th Cir. 2016) (citation and quotation marks

omitted, punctuation altered).

"If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the

first prong, . . . he is entitled to qualified immunity."  *Blackwell v. Laque*, No. 07-30184, 2008

WL 1848119, at *2 (5th Cir. Apr. 24, 2008).  But if it did, "the court then asks whether qualified

immunity is still appropriate because the defendant's actions were 'objectively reasonable' in

light of 'law which was clearly established at the time of the disputed action.'"  *Brown v.*

*Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537

(5th Cir. 2004)).

"It is important to emphasize that this inquiry 'must be undertaken in light of the specific

context of the case, not as a broad general proposition.'"  *Brosseau v. Haugen*, 543 U.S. 194, 198

(2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).  "The dispositive question is

whether the violative nature of particular conduct is clearly established."  *Mullenix v. Luna*, 136

S. Ct. 305, 308 (2015) (citation and quotation marks omitted). Thus, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Finally, the Court may take these inquiries out of order and first consider whether the defendant violated clearly established law. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009) (holding that courts may consider second qualified-immunity prong first). Given this record, the Court will take that approach.

III.    Analysis

To succeed on a First Amendment retaliation claim under § 1983, a public employee must establish that "(1) [s]he suffered an adverse employment action; (2) [s]he spoke as a citizen on a matter of public concern; (3) h[er] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (citation omitted).

In this case, Walker suffered an adverse employment action when Smith fired her, and the Court has already found a question of fact regarding causation. *See* Feb. 5, 2019 Order [160] at 18. Accordingly, Walker would survive summary judgment as to the first and fourth elements. This Order focuses on the third element, whether Walker spoke as a citizen on a matter of public concern when she contacted MBI.

This element triggers a dicey test that has evolved since the Supreme Court decided *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Earlier this year, the Fifth Circuit described that history:

> "Public employees do not surrender all their First Amendment rights by reason of
> their employment." [*Garcetti*, 547 U.S. at 417.] Instead, "the First Amendment
> protects a public employee's right, in certain circumstances, to speak as a citizen
> addressing matters of public concern." [*Id.*] This right is not absolute, because

"[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." [*Id.* at 418.] . . .

> *Garcetti v. Ceballos* settled that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." [*Id.* at 421.] *Garcetti* left for later the line between citizen and public-employee speech. As relevant here, after *Garcetti*, we repeatedly held that employees speaking in discharge of job-imposed obligations to report wrongdoing did so as public employees—not as citizens. [Citation omitted].

> Clarity came with *Lane v. Franks*' holding that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." [573 U.S. 228, 240 (2014).] Under *Lane*, a general job-imposed obligation to detect and prevent wrongdoing does not qualify as an employee's "official duty" because "such broad [obligations] fail to describe with sufficient detail the day-to-day duties of a public employee's job." [*Howell v. Town of Ball*, 827 F.3d 515, 523–24 (5th Cir. 2016).]

*Anderson v. Valdez,* 913 F.3d 472, 476–77 (5th Cir.), *reh'g denied*, 916 F.3d 404 (5th Cir. 2019).

Walker applies this law to her asserted facts, some of which are not disputed. To begin, the parties agree that before Smith terminated Walker's employment, she approached him claiming that someone obtained her personal bad-check history from a computer in the District Attorney's Bad Check Unit. Feb. 5, 2019 Order [160] at 5. Walker expressed concern that someone outside the office had hacked the computer and that such conduct might compromise a witness, attorney, or judge. *Id.* Accordingly, Walker sought and received permission from Smith to contact MBI. *Id.* It is not clear what she told the investigators or in what context the conversation occurred.

Walker then says that the record evidence fails to show that contacting MBI was part of her "ordinary job responsibilities." Pl.'s Mem. [164] at 3. According to her, the record merely shows that "the prosecution of felony crimes may at times call for work alongside outside law enforcement agencies" but it was not "part of Walker's *ordinary* job responsibilities." *Id.*

5

(emphasis added). Walker offers no evidence establishing that point, merely noting that the existing record is "vague" regarding her job duties. *Id.* And Smith responds with the equally unsupported assertion that under the "predominant pattern," MBI would call the prosecutors but that "there is nothing unusual about any district attorney or any assistant district attorney contacting a law enforcement agency to request an investigation of a perceived criminal." Def.'s Mem. [165] at 2.

Both parties could have supported their positions with an affidavit or other record evidence, but the lack of evidence on this point is detrimental to Walker. Once Smith invoked qualified immunity, Walker had the burden "to show that the defense is not available." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). Indeed, the Court had ordered Walker to show cause why qualified immunity does not apply. *See* Feb. 5, 2019 Order [160] at 20.

Without evidence indicating the extent to which Walker's job as an ADA required communication with MBI, it is impossible to know whether she spoke as an employee or citizen. And "[t]o the extent that additional facts could show [Walker] was not acting pursuant to [her] official duties . . . [Walker] has failed to meet [her] burden of producing evidence sufficient to show that [Smith] violated [her] clearly established constitutional rights." *Gibson v. Kilpatrick*, 773 F.3d 661, 672 (5th Cir. 2014) (noting that plaintiff failed to establish facts such as "[w]hether he spoke with the agents during working hours, . . . and whether he offered the assistance of local law enforcement"); *see also Watts v. City of Jackson*, 827 F. Supp. 2d 724, 731 (S.D. Miss. 2011) ("Without knowing context, the Court cannot say Watts met his burden of proving that his 'work with the FBI' occurred in his capacity as a 'citizen.'" (quoting *Elizondo v. Parks*, 431 F. App'x 299, 303 (5th Cir. 2001) (alteration omitted)).

Even assuming the job duties were as Walker says, she fails to show that Smith violated her clearly established rights. As noted, Walker says contacting MBI was not part of her *ordinary* job responsibilities, but that test did not exist when Smith terminated her employment. *See* Pl.'s Mem. [164] at 3. Walker lost her job in January 2014; *Lane* created the ordinary-duties inquiry in June 2014. 573 U.S. at 240. So the question turns to the clearly established law regarding public-employee free speech that existed before *Lane*. *See Howell v. Town of Ball*, 827 F.3d 515, 525 (5th Cir. 2016).

Walker addresses that problem to some extent when she says that "[a]fter *Garcetti*, all officials were put on notice that a public employee's speech is protected when made in the person's role as a citizen." Pl.'s Mem. [164] at 14. But the Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308 (citation omitted). Walker must instead confront the specific facts of this case.

The closest Walker comes to that burden is her argument that she spoke as a citizen because she complained outside the chain of command. Pl.'s Mem. [164] at 4 (citing *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)). In *Davis*, a university employee (Davis) was asked to investigate whether faculty members were viewing pornography on their work computers. 518 F.3d at 307. Davis concluded that they were—including possible child pornography—so she took her concerns up the chain of command. *Id.* at 307–08. But when her superiors failed to take the results seriously, Davis went outside the university and contacted the FBI on her own initiative. *Id.* at 309. The Fifth Circuit held that if "a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." *Id.* at 313.

Walker likens her contact with MBI to Davis's contact with the FBI. But the Fifth

Circuit has since clarified that the result in *Davis*

> is only *ordinarily* the case, as no single fact or factor is dispositive. There is no heuristic for *Garcetti*'s applicability; rather, "the proper inquiry is a practical one." *Garcetti,* 547 U.S. at 424, 126 S. Ct. 1951. For when an employee's official duties include communicating with outside agencies . . . it would be in dissonance with *Garcetti* to conclude that, when he does so, he enjoys First Amendment protection.

*Gibson*, 773 F.3d at 670. In other words, the context matters.

The context in this case differs from *Davis* in at least two ways. First, the employee in

*Davis* was responsible for workplace computer audits and there is no indication that her job

responsibilities ever required communication with the FBI. 518 F.3d at 307. Walker states that

as an ADA, she at times worked "alongside" outside law enforcement agencies. Pl.'s Mem.

[164] at 3. Second, the plaintiff in *Davis* was operating on separate tracks when she complained

internally and then confidentially took her concerns to the FBI. 518 F.3d at 308–09. Walker

actually followed the chain of command; she first informed Smith about the possible breach, and

he approved her request to contact MBI. Thus, the facts in *Davis* fail to put Smith on notice that

Walker spoke as a citizen. *See Mullenix*, 136 S. Ct. at 308 (explaining extent to which facts must

be similar to clearly establish a right).

Walker's other pre-*Lane* authority is even less helpful. *See Charles v. Grief*, 522 F.3d

508, 509-10, 514 (5th Cir. 2008) (holding that state lottery commission employee who sent e-

mail to high-ranking commission officials raising concerns about racial discrimination and

retaliation acted as a citizen); *Early v. S. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs*, 252 F. App'x

698, 699 (5th Cir. 2007) (holding that terminated campus police officer acted as citizen when he

complained of race and sex discrimination against a co-worker).

In sum, Walker cannot rely on *Lane,* and she has not presented a sufficiently similar case establishing a clearly established right in January 2014. The same thing happened in two Fifth Circuit cases. First in *Howell v. Town of Ball*, a police officer approached the FBI regarding potential corruption involving the chief of police and others and then worked the case as a confidential informant. 827 F.3d at 520. The Fifth Circuit first considered whether a constitutional violation occurred and noted that Howell "offered evidence that his involvement in the FBI investigation was outside the ordinary scope his professional duties." *Id.* at 523. Howell also established that his contact with the FBI occurred "outside the normal chain of command *and without the knowledge or permission of anyone else* in the police department." *Id.* at 524 (emphasis added). Applying these facts to *Lane*, the Fifth Circuit held that "the district court erred in finding that Howell's involvement in the FBI investigation was in furtherance of his ordinary job duties, and thus was not entitled to First Amendment protection." *Id.*

The initial holding in *Howell* is distinguishable in at least two ways: the plaintiff offered evidence that calling the FBI fell outside the ordinary scope of his duties and he did not receive permission from his employer to contact the outside agency. But even assuming *Howell* establishes that Smith violated Walker's First Amendment rights, the *Howell* Court also found that the law was not clearly established when the employment decision occurred:

> At the time that Howell was fired, *Garcetti*'s distinction between speech made pursuant to official duties and speech made as a private citizen was relatively new, and this court had not considered it in the context of an action involving a police officer's statements to an outside law enforcement agency, or in the context of a law enforcement officer's assistance with an outside agency's investigation. *Garcetti*, by its own admission, did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *See* 547 U.S. at 424, 126 S. Ct. 1951. Furthermore, the Supreme Court did not emphasize that only speech made in furtherance of an employee's "ordinary" job duties is not protected until nearly three years after Howell was discharged. *See Lane*, 134 S. Ct. at 2369; *see also Gibson*, 773 F.3d at 668 (acknowledging that, although *Lane*'s insertion of the qualifier "ordinary" did not

9

meaningfully alter *Garcetti*'s original test, it does provide additional guidance regarding what speech falls within an employee's official duties); *Mpoy v. Rhee*, 758 F.3d 285, 295 (D.C. Cir. 2014) ("In particular, the use of the adjective 'ordinary'—which the [C]ourt repeated nine times—could signal a narrowing of the realm of employee speech left unprotected by *Garcetti*.").

> The lack of the application of *Garcetti* to similar facts at the time of Howell's discharge, coupled with the Supreme Court's only recent clarification of *Garcetti*'s citizen/employee distinction in *Lane*, compels us to hold that the Board defendants did not violate a "clearly established" constitutional right when voting to fire Howell.

*Id.* at 525–26.

A similar ruling followed in *Anderson v. Valdez*, where a court employee reported alleged judicial misconduct to the Texas State Commission on Judicial Conduct. 913 F.3d at 474. Although the employer arguably violated the First Amendment, the Fifth Circuit held that qualified immunity applied:

> *Lane* and our post-*Lane* caselaw make clear that a general obligation to report judicial misconduct does not constitute an "official duty" demarcating employee speech under *Garcetti*. That said, *Lane* was decided in June 2014—roughly one month after Anderson's employment offer was withdrawn—leaving unsettled whether Anderson then spoke as a citizen or as an employee.

*Id.* at 477 (reversing district court order denying qualified immunity).

Walker's claim is much like those in *Howell* and *Anderson*. She too lost her job before *Lane* clarified the *Garcetti* test, so Smith would not have known to consider whether the referral to MBI fell within Walker's "ordinary" duties. And assuming—as Walker says—her job "at times" required her to "work alongside outside law enforcement agencies," Pl.'s Mem. [164] at 3, then the case is again similar to *Anderson* where the plaintiff exercised a duty that fell beyond the ordinary scope of his employment, 913 F.3d at 478.

As noted, the employee/citizen test is context specific and "no single fact or factor is dispositive." *Gibson*, 773 F.3d at 670. Walker has not provided a case indicating that an ADA

10

who works at times alongside an outside law-enforcement agency speaks as a citizen when she seeks and receives permission to initiate an investigation with one of those agencies. For these reasons, Walker has not met her burden of establishing that Smith violated clearly established law. The individual-capacity First Amendment claims against Smith are therefore dismissed.[1]

III.    Conclusion

The Court has considered all arguments raised; those not addressed would not have changed the outcome. For the reasons stated, Plaintiff's First Amendment retaliation claim is dismissed. Because summary judgment has been granted as to all claims, this action is dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 23rd day of April, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Walker also sued Smith in his official capacity. Such claims are claims against the governmental entity and not the individual. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). And as the Court has previously held, District Attorney Smith is not a county official; he is an elected State official. *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991); *see also Burnett v. Hinds Cty., Miss. ex rel. Bd. of Sup'rs*, No. 3:14-CV-651-CWR-FKB, 2015 WL 5785562, at *2 (S.D. Miss. Sept. 11, 2015) (Reeves, J.) ("A district attorney's office in the State of Mississippi is considered an arm of the State."). As an arm of the state, Smith is not a "person" under § 1983. *Burnett*, 2015 WL 5785562, at *2 (citation omitted). He would also enjoy Eleventh Amendment immunity from suit in federal court. *Id.*